UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――― x
In re RENAISSANCERE HOLDINGS LTD.   :    Master File No. 1:05-cv-06764-WHP
SECURITIES LITIGATION                 :
                                                        :    <u>CLASS ACTION</u>
――――――――――――――――――――――――――     :
                                                         :
This Document Relates To:            :
                                                         :
       ALL ACTIONS.          :
―――――――――――――――――――――――――― x

**LEAD PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Kay E. Sickles
Eric Lechtzin
**SCHIFFRIN BARROWAY TOPAZ
& KESSLER, LLP**
280 King of Prussia Road
Radnor, PA  19087
Tel.:  (610) 667-7706
Fax:  (610) 667-7056

Samuel H. Rudman
**LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
58 South Service Road, Suite 200
Melville, NY  11747
Tel.:  (631) 367-7100
Fax:  (631) 367-1173

*Co-Lead Counsel for Lead Plaintiffs
and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

I.    INTRODUCTION ...........................................................................................1

II.   ANALYSIS OF THE SETTLEMENT .............................................................3

      A.    Introduction...........................................................................................3

      B.    The Standard For Approval Of A Settlement And An Analysis
            Of The *Grinnell* Factors......................................................................4

            1.    The Complexity, Expense And Likely Duration Of The
                  Litigation Supports Approval Of The Settlement ..........................5

            2.    The Reaction Of The Class To The Settlement .............................6

            3.    The Stage Of The Proceedings, Discovery Completed And
                  Formal Mediation........................................................................6

            4.    The Risk Of Establishing Liability ...............................................9

            5.    The Risks Of Establishing Damages............................................10

            6.    The Risks Of Maintaining The Class Action Through Trial........10

            7.    The Ability Of Defendants To Withstand A Greater Judgment ..................11

            8.    The Reasonableness Of The Settlement In Light Of The
                  Best Possible Recovery And The Attendant Risks Of Litigation ...............11

III.  THE PROPOSED FORM AND METHOD OF CLASS NOTICE
      AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE ....................13

      A.    The Available Information Concerning The Identities Of Class
            Members And Their Transactions .........................................................13

      B.    The Scope Of The Notice Program .......................................................14

      C.    The Scope Of The Notice Program Is Adequate ...................................15

      D.    The Proposed Form Of Notice Comports With The Requirements
            Of Due Process And Rule 23 And Is The Same Or Similar To
            The Form(s) Of Notice Routinely Approved By The Courts
            In This Jurisdiction .............................................................................17

i

    E.    The Requirement That Class Members Complete A Proof Of Claim
Form And The Information Required For Verification Of The Claims ............... 19

IV.    DEPOSIT OF THE SETTLEMENT FUND INTO THE COURT
REGISTRY INVESTMENT SYSTEM .......................................................................... 20

V.    PROPOSED SCHEDULE ............................................................................................ 21

VI.    CONCLUSION ............................................................................................................ 23

## TABLE OF AUTHORTIES

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   MDL Docket No. 1500, 02 Civ. 5575 2006 U.S. Dist.
   LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ...................................................5, 9, 12

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) ...............................................................11

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 Civ. 1597 (WHP), 2004 U.S. Dist.
   LEXIS 24129, (S.D.N.Y. Dec. 2, 2004) ..................................................5, 8, 9

*In re Cendant Corp. Sec. Litig.*,
   109 F. Supp. 2d 235 (D.N.J. 2000) .............................................................12

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................4

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .........................................................................11

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................................10

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004)..............................................................8, 12

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................4, 9

*Heyer v. New York City Housing Auth.*,
   No. 80 Civ. 1196 (RWS), 2006 U.S. Dist.
   LEXIS 25089 (S.D.N.Y. Apr. 27, 2006) .......................................................8

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 U.S. Dist.
   LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ...................................................5, 12

*In re: Gilat Satellite Networks, Ltd.*,
   CV-02-1510 (CPS), 2007 U.S. Dist.
   LEXIS 29062 (E.D.N.Y. Apr. 19, 2007).......................................................16

*In re Independent Energy Holdings PLC Sec. Litig.*,
   Master File No. 00-CIV- 6689 (SAS) 2003 U.S. Dist.
   LEXIS 17090 (S.D.N.Y. Sept. 26, 2003) ...............................................10, 12

*In re Interpublic Sec. Litig.*,
  Civ. 6527 (DLC), 2004 U.S. Dist.
  LEXIS 21429 (S.D.N.Y. Oct. 27, 2004) ...................................................................12

*Lewis v. Newman*,
  59 F.R.D. 525 (S.D.N.Y. 1973).........................................................................................9

*In re Luxottica Group S.p.A. Sec. Litig.*,
  No. CV 01-3285 (JBW) (MDG), 2005 U.S. Dist.
  LEXIS 27765 (S.D.N.Y. Nov. 15, 2005) ....................................................................16

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  02 MDL 1484 2007 U.S. Dist.
  LEXIS 9450 (S.D.N.Y. Jan. 31, 2007).........................................................................15

*In re Michael Milken & Assoc. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993).............................................................................4, 9, 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997).......................................................................................4

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ...........................................................................................12

*In re Prudential Secs. Ltd. P'shps. Litig.*,
  164 F.R.D. 362 (S.D.N.Y. 1996)...................................................................................16

*Spann v. AOL Time Warner, Inc.*,
  No. 02-8238, 2005 U.S. Dist.
  LEXIS 10848 (S.D.N.Y. June 7, 2005).........................................................................4

*In re Stock Exchs. Options Trading Antitrust Litig.*,
  99 Civ. 0962 MDL No. 1283, Master Docket No. M-21-79 (RCC),
  2006 U.S. Dist. LEXIS 87825 (S.D.N.Y. Dec. 4, 2006)................................................17

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................................................6

*Tittle v. Enron Corp. (In re Enron Corp. Secs.)*,
  228 F.R.D. 541 (S.D. Tex. 2005) ...................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...............................................................................................4

iv

*In re Warfarin Sodium Antitrust Litigation*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................................11

*Weigner v. City of New York*,
    852 F.2d 646 (2d Cir.1988), *cert. denied*, 488 U.S. 1005,
    109 S. Ct. 785, 102 L. Ed. 2d 777 (1989) ...................................................................15

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .........................................................................................17

FEDERAL STATUTES

15 U.S.C.A. §78u-4(a)(7)(A)-(F) ...............................................................................................18

Manual for Complex Litigation (Third), at § 30.41 (1995) .........................................................5

Lead Plaintiffs District No. 9, I.A. of M. & A.W. Pension Trust, Pension Trust for Operating Engineers, and Joseph Moss respectfully submit this Supplemental Memorandum of Law in Support of their Motion for Preliminary Approval of Settlement. Lead Plaintiffs seek entry of an order (i) granting preliminary approval to the proposed settlement set forth in the Stipulation and Agreement of Settlement (the "Stipulation") dated as of April 13, 2007; (ii) approving the form and manner of giving notice of the proposed Settlement to the Class; and (iii) setting a hearing date for final approval thereof (the "Settlement Hearing").[1]

## I.    <u>INTRODUCTION</u>

The Parties appeared before the Court on July 17, 2007 (the "Hearing") to present the Settlement for preliminary approval. At the hearing, the Court requested that counsel for the Parties supplement their prior submission in support of preliminary approval of the Settlement as follows:

a.      Provide more fulsome support for the Settlement;

b.      Explain whether and to what extent the Company is able to provide information concerning Class Members' transactions during the Class Period;

---

[1]  All capitalized terms used herein are defined in the Stipulation. As part of their Supplemental Memorandum, Co-Lead Counsel are submitting the following: i) Joint Declaration of Ellen Gusikoff Stewart and Kay E. Sickles ("Joint Decl.") (Exhibit A); ii) Declaration of Paul Mulholland, Co-Lead Counsel's damage expert ("Mulholland Decl.") (Exhibit B); iii) Declaration of Anya Verkhovskaya, Senior Vice President of A.B. Data, Ltd.'s Class Action Administration Division ("A.B. Data Decl. Re: Claims Process") (Exhibit C); iv) The Qualification Declaration of Anya Verkhovskaya, Senior Vice President of A.B. Data, Ltd.'s Class Action Administration Division (Exhibit D); v) Declaration of Vincent C. Graffeo, Relationship Manager at Mellon Investor Services LLC, transfer agent to RenaissanceRe ("Mellon Decl.") (Exhibit E); vi) Revised Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Reimbursement of Expenses and Settlement Fairness Hearing and Proof of Claim form ("Revised Notice" and "Revised Proof of Claim") (Exhibit F); and vii) Exemplar notices of pendency of class action settlements (Exhibit G).

1

c.  Explain whether it is viable or permissible for Co-Lead Counsel and the claims administrator to complete Proof of Claim on behalf of Class Members whose transactional data is in the possession of Co-Lead Counsel;

d.  State the number of Notices and Proof of Claim forms (the "Claim Packet") Co-Lead Counsel expect to disseminate; how Co-Lead Counsel arrived at that number; and what percentage of Class Members Co-Lead Counsel believe that number represents;[2]

e.  Provide a declaration by A.B. Data containing a description of its qualifications;[3]

f.  Provide a representation that the Summary Notice will be disseminated over the Internet and describe the manner in which it will be disseminated over the Internet;

g.  Explain whether it is viable to place the Settlement Fund in a CRIS account held by the Court; and

h.  Provide a representation that the surplus funds will escheat to the United States government.

In addition, the Court requested that counsel review the Claim Packet for possible revisions that would render the documents more accessible to lay person Class Members.

---

[2] The process of Disseminating the Claims Packets will be referred to herein as the Notice Program.

[3] The Qualification Decl. is attached hereto as Exhibit D.

II.    **ANALYSIS OF THE SETTLEMENT**

   A.    **Introduction**

   The proposed Settlement now before the Court will enable the Class to recover Thirteen Million Five Hundred Thousand Dollars ($13,500,000) in cash (the "Settlement Fund"), plus interest earned thereon, in exchange for the dismissal of all claims against defendants RenaissanceRe Holdings Ltd. ("RenaissanceRe" or the "Company"), John M. Lummis, Martin J. Merritt, William I. Riker and James N. Stanard ("Settling Defendants") (together, the "Defendants") (Lead Plaintiffs and the Settling Defendants are the "Parties").[4]

   As discussed herein, the proposed Settlement is a very good result for Lead Plaintiffs and the Class in light of all of the existing circumstances.  The Settlement provides a recovery of approximately 16% the maximum provable damages attributable to the alleged fraud.[5]  A settlement of this magnitude, obtained for the Class before incurring most of the high costs of litigation and without causing significant delay, in circumstances where Lead Plaintiffs faced significant hurdles to proving liability, is certainly within the range of what would be evaluated as fair, reasonable and adequate.  *See* Mulholland Decl., attached hereto as Exhibit B. Accordingly, Lead Plaintiffs respectfully submit that an analysis of the *Grinnell* factors, set forth below, supports preliminary approval of the Settlement.

---

[4] The Class is defined as all persons who purchased RenaissanceRe common stock between April 22, 2003 through July 25, 2005, inclusive.

[5] *See* Mulholland Decl., Exhibit B, ¶ 8.  However, as set forth below, at the mediation, Defendants argued that the class period would ultimately be substantially truncated, setting the stage for arguments in favor of class wide damages equating to a fraction of Lead Plaintiffs' experts' calculation.  *See* Joint Decl., Exhibit A, ¶ 8; § II.B.6, below.

**B.    The Standard for Approval of a Settlement and an Analysis
of the *Grinnell* Factors**

The standard for reviewing the proposed settlement of a class action is whether the proposed settlement is "fair, adequate, and reasonable." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 at 116 (2d Cir. 2005); *Spann v. AOL Time Warner, Inc.*, No. 02-8238, 2005 U.S. Dist. LEXIS 10848, at *15 (S.D.N.Y. June 7, 2005).   A strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448 at 463 (2d Cir. 1974) (citations omitted).

At this stage, courts are encouraged to grant preliminary approval "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval." *See In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing MANUAL FOR

4

COMPLEX LITIGATION (THIRD), at § 30.41 (1995)).  Here, where the Settlement was reached after

arms' length negotiations in the context of a formal mediation, after a significant investigation

was undertaken, and a substantial sum is being recovered by the Class, the standard for

preliminary approval is readily satisfied.  *See* Joint Decl., Exhibit A, ¶ 6.

> **1.    The Complexity, Expense and Likely Duration of the**
> **Litigation Supports Approval of the Settlement**

Courts have consistently recognized the complexity, expense and likely duration of

litigation to be a critical factor in evaluating the reasonableness of a settlement, especially where

the settlement being evaluated is a securities class action.  *See, e.g., Hicks v. Morgan Stanley &*

*Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005);

*In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *6,

(S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud

issues "that were likely to be litigated aggressively, at substantial expense to all parties").  *See*

*also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL Docket No. 1500, 02 Civ. 5575

(SWK), 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious

complexity," securities class actions often settled to "circumvent the difficulty and uncertainty

inherent in long, costly trials").

This case is no exception.  Lead Plaintiffs advance numerous complex legal and factual

issues under the federal securities laws, which would require extensive expert discovery and

testimony.  As noted by various courts, the process of completing fact and expert discovery

would be costly, expensive and time-consuming.  This Settlement obviates the additional *years*

of contested discovery, and eliminates the time and expense of the substantial briefing that likely

would occur going forward in this case.[6]  Thus, this Settlement enables the Class to recover a significant portion of its losses many years sooner than it would if the Action went to trial, conserves judicial resources and reduces the expense associated with the significant fact and expert discovery and briefing required to prosecute these claims.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member is willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery").

Therefore, Lead Plaintiffs respectfully submit that an analysis of this factor weighs in favor of preliminary approval of the Settlement.

### 2.    The Reaction of the Class to the Settlement

Lead Plaintiffs have participated throughout the prosecution of their claims, approved the decision to participate in mediation, and were actively involved in the decision to enter into the Settlement with Defendants.  *See* Joint Decl., Exhibit A, ¶¶ 3-7.  Class notice regarding the Settlement has not yet been mailed or otherwise distributed.  In the event any objections are received after the Notice is disseminated, they will be addressed by Co-Lead Counsel in connection with their motion for final approval of the Settlement.

### 3.    The Stage of the Proceedings, Discovery Completed and Formal Mediation

The volume and substance of Co-Lead Counsel's knowledge of the merits and weaknesses of Lead Plaintiffs' claims are unquestionably adequate to support the Settlement.

---

[6]  Given that Defendants refused even to stipulate to Lead Plaintiffs' request to amend the operative complaint after the SEC filed its complaint against the Defendants, Lead Plaintiffs would anticipate that the discovery process would be contentious.

This knowledge is based, first and foremost, on Co-Lead Counsel's extensive investigation and discovery during the prosecution of this Action, including, *inter alia*: (i) review of RenRe's SEC filings, regulatory filings and reports, and hundreds of securities analysts' reports and advisories about the Company; (ii) review of hundreds of press releases and other statements issued by the Company; (iii) review of media reports about the Company; (iv) consultation with an investigator, a damage expert and a forensic accountant; (v) research and analysis of the reinsurance industry, finite insurance and Inter-Ocean; (vi) interviews with confidential witnesses and former employees of RenRe; and (vii) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto. The accumulation of the information found in the above sources permitted Co-Lead Counsel to draft the detailed allegations in the Consolidated Amended Class Action Complaint ("CAC"), filed February 14, 2006. Defendants moved to dismiss the CAC in June 2006.

As the Court is well aware, Lead Plaintiffs are prevented by the PSLRA from obtaining discovery from Defendants until the Court has denied any motion to dismiss that has been filed. However, following Lead Plaintiffs' drafting of the CAC and the Parties' completion of briefing on the motion to dismiss, the SEC filed its complaint against Defendants Standard, Merritt and Cash. The public release of the fruits of the SEC's investigation permitted Lead Plaintiffs access to information that previously was been publicly available and Lead Plaintiffs, after seeking leave to amend, filed their Second Amended Consolidated Class Action Complaint ("SAC") on December 4, 2006.

Thereafter, the Parties began to discuss the prospect of a resolution and agreed to participate in formal mediation presided over by the Honorable Layn R. Phillips, a former federal district judge. In advance of the mediation, the Parties prepared detailed mediation statements

for review by Judge Phillips. On February 14, 2007, the Parties participated in an all-day formal mediation and ultimately agreed to resolve the Action for $13,500,000. Joint Decl., ¶¶ 6, 8.

A critical term of the Parties' agreement to resolve the Action was that RenRe would produce for Lead Plaintiffs' review all of the documents it previously produced to the SEC. Soon after the February 14, 2007 mediation, these documents, which numbered in the tens of thousands of pages, were produced to Co-Lead Counsel, who reviewed and analyzed the documents.

By the time the Parties entered into an agreement to settle this Action --after drafting two extensive and detailed amended complaints, conducting the investigation required to craft those complaints, consulting with various experts, consultants, and former RenRe employees, reviewing tens of thousands of pages of documents produced by Defendants, fully briefing Defendants' motion to dismiss, and engaging in the formal mediation process with Defendants -- Co-Lead Counsel were extremely knowledgeable of the issues in the Action and able to recommend the Settlement to Lead Plaintiffs, and upon preliminary approval by the Court, the Class. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D.436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *see also Heyer v. New York City Housing Auth.*, No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089, at *9 (S.D.N.Y. Apr. 27, 2006) (finding even though limited discovery was completed before settlement negotiations began, the familiarity of counsel for all parties with the case justifies settlement); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *6 (approving settlement where plaintiffs reviewed "expedited informal discovery" and merits discovery was not undertaken). Therefore, this Court should find that this factor also supports the Settlement.

### 4.    The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463.   Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.   *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "the difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *6 (finding that issues present in securities action presented significant hurdles to proving liability, "including difficulties in establishing defendants' "actual knowledge" of falsity, dueling interpretations of established accounting standards, and proving that defendants' reliance on the advice of two accounting firms was unreasonable"). *In re Michael Milken*, 150 F.R.D. at 53 (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)) (when evaluating securities class action settlements, courts have long recognized such litigation to be "notably difficult and notoriously uncertain").

Lead Plaintiffs believe that the allegations of the Complaint not only meet the pleading standards for the claims asserted, but that the allegations would ultimately be borne out by the evidence.  However, the Court has yet to sustain the Complaint, and Lead Plaintiffs are unable to pursue formal discovery from Defendants and third-parties until that occurs.  Lead Plaintiffs recognize that they would face not only the hurdles to proving liability that typically render securities actions difficult for plaintiffs to prevail, but also that Defendants have articulated a defense to Lead Plaintiffs' pleading of loss causation that could be accepted by the Court.  As a result, the risk that the Action could be dismissed at the pleading stage, when weighed against the immediate benefits of this Settlement, favors a finding that the Settlement is well within the range of reasonableness.

### 5. The Risks of Establishing Damages

Lead Plaintiffs also face substantial risk in proving damages. *See In re Independent Energy Holdings PLC Sec. Litig.*, Master File No. 00 CIV 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 26 2003) (noting difficulty of proving damages in securities cases). In order to prevail, Lead Plaintiffs would be required to prove that Defendants' alleged false and misleading statements inflated the price of RenRe common stock, as well as the amount of the artificial inflation. Co-Lead Counsel, with the assistance of their damage expert, have calculated preliminarily the damages that are attributable to Defendants' alleged wrongdoing. However, this figure assumes that every element of the Class' damages theory is accepted by the jury as being correct and recoverable. As such, its viability as an actual calculation for damages could be affected by many factors that arise in the litigation, including Defendants' rebuttals and defenses to Lead Plaintiffs' damage calculations and expert testimony. Indeed, it is evident that Defendants would attack the relevance of each of the drops in the price of the stock that Lead Plaintiffs assert in the Complaint is connected to the alleged fraud. *In re Michael Milken*, 150 F.R.D. at 54 (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts…with no guarantee of the outcome"). This factor further militates in favor of a sum-certain Settlement.

### 6. The risks of maintaining the class action through trial

Co-Lead Counsel believe this case is appropriate for class certification. However, as the class had not yet been certified, and class certification can be reviewed and modified at any time before trial, there is always a risk that the action, or particular claims in the action, might not be maintained as a class through trial. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might not be certified is not illusory"). At the mediation,

Defendants asserted that a much shorter class period than the class period plead by Lead Plaintiffs would be appropriate, and that they would seek to advance this position in the course of the litigation.  Joint Decl., Exhibit A, ¶ 8.  If Defendants' theory concerning the proper class period were adopted by the Court, it would significantly diminish the maximum recoverable damages.  Thus, the risks of failing to obtain class certification and failing to maintain the class through trial also weigh in favor of this settlement.

> **7.    The Ability of Defendants to Withstand a Greater Judgment**

Although the Court may also consider a defendants' ability to withstand a judgment greater than that secured by settlement, it is not generally one of the determining factors.  *See In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 538 (3d Cir. 2004) (affirming district court's finding that Dupont's ability to pay more was irrelevant to assessment of settlement). Here, Co-lead Counsel do not dispute the viability of the Company's financial resources. However, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and in fact, the ability of defendants to pay more money does not render a settlement unreasonable.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 538 (3d Cir. 2004).  Therefore, Co-Lead Counsel respectfully submit that an analysis of this factor does not impact the conclusion that this Settlement falls within the range of a reasonable settlement.

> **8.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths

and weaknesses of the plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689 at 693 (2d Cir. 1972); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in the context of the legal and practical obstacles to obtaining a large recovery"); *Independent Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried before a jury result in full amount of damages claimed). In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Settlement Class *now*, rather than a speculative payment many years down the road. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 (where settlement fund in escrow earning interest "the benefit of the Settlement will…be realized far earlier than a hypothetical post-trial recovery").

Here, the Settlement provides a recovery of approximately 16% of Lead Plaintiffs' experts' estimate of the maximum damages attributable to the fraud alleged. *See* Mulholland Decl., Exhibit B, ¶ 8. Settlements providing for such a percentage recovery, especially when the plaintiffs face risks such as the risks faced by Lead Plaintiffs, are readily approved by the Courts. *See, e.g., Hicks*, 2005 U.S. Dist. LEXIS 24890, at *19 (finding settlement representing 24.4% of defendants' damage estimate and 3.8% of plaintiffs' damage estimate within range of reasonableness); *In re Interpublic Sec. Litig.*, Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *24 (S.D.N.Y. Oct. 27, 2004) (finding settlement reflecting 10% to 20% of damage estimate to sit comfortably within range of reasonableness); *Newman v. Stein*, 464 F.2d 689 at 698 (2d Cir.

1972) (finding 14% recovery to be in zone of reasonableness). *See also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (citing case law and other source noting that typical recoveries in securities class action settlements range from 1.6% to 14%). Therefore, considering the present and time value of money, the probability of lengthy litigation in the absence of a settlement, and the risk that the Class would not succeed in proving liability against the Defendants, the Settlement is well within the range of reasonableness. As Judge Harmon aptly put it when approving one of the settlements in the *Enron* ERISA Litigation, "[t]he settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." *Tittle v. Enron Corp. (In re Enron Corp. Secs.)*, 228 F.R.D. 541, 566 (S.D. Tex. 2005).

In addition, as stated above, Defendants asserted at the mediation that a much shorter class period than the class period plead by Lead Plaintiffs would be appropriate, and that they would seek to advance this position in the course of the litigation. By calculating preliminarily the damages that could be attributable to that shorter class period, Co-Lead Counsel is aware that if Defendants' theory concerning the proper class period were to prevail, the Class' opportunity for recovery would be significantly diminished, by about 75%. Joint Decl., Exhibit A, ¶ 8. If the Settlement is viewed in that context, it is an outstanding recovery. Accordingly, the analysis of these factors supports preliminary approval of the Settlement.

III. **THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE**

A. **The Available Information Concerning the Identities of Class Members and Their Transactions**

Co-Lead Counsel have obtained and will continue to obtain the identity of the Class Members and certain limited information concerning some of the Class Members' transactions through three avenues for the purpose of disseminating Notice: 1) examination of the Company's

13

transfer records; 2) mailing the Claim Packet to more than 3,500 of the largest brokers, banks and other financial institutions holding RenRe common stock in street name as nominees ("Broker Mailing"); and 3) receipt from the Company of a list of individuals that received (and exercised) stock option grants directly from the Company.[7]

At the Hearing, the question arose whether the first two avenues of obtaining Class Member identities would be sufficient to reach all of the individual members of the Class. (The third avenue was discovered through discussions among Co-Lead Counsel and counsel for Defendants following the Hearing.) After speaking with the transfer agent and the Company, the Parties believe that these three avenues represent all of the avenues available to them and that these three avenues will provide for an adequate Notice Program. *See* A.B. Data Decl. Re: Claims Process, attached hereto as Exhibit C, ¶ 13; Mellon Decl., Exhibit E, ¶ 3-6.

**B.      The Scope of the Notice Program**

The Claims Administrator anticipates making an initial mailing of approximately 4,000 Claim Packets. *See* A.B. Data Decl. Re: Claims Process, Exhibit C, ¶ 14. These 4,000 Claim Packets will be sent to the 150 Class Members whose names appear in the Company's transfer records and to the approximately 3,500 brokers, banks and other financial institutions that A.B. Data believes may hold RenRe stock in street name for Class Members. *Id.*, ¶ 14. The Claims Administrator anticipates that responses from the brokers will cause dissemination of a total of 35,000 Claim Packets. *Id.* A.B. Data concluded that it will disseminate in the magnitude of

---

[7]  The list contains the names of only 19 individuals and all of the 19 individuals whose names appear on the list are also listed in the transfer records. However, this list obtained from the Company shows that these 19 individuals purchased 1,474,508 shares of RenRe common stock during the Class Period. Joint Decl., Exhibit A, ¶ 10. Although the list provided by the Company provides information concerning the number of shares these individuals purchased during the Class Period, it does not provide any information concerning any sales of the shares purchased.

35,000 Claim Packets by considering a number of factors, including: i) the length of the Class Period; ii) trading volume of RenRe common stock during the Class Period; iii) the percentage of institutional ownership of RenRe common stock; and iv) A.B. Data's past experience in dozens of recent securities class actions of this type and size. *Id.* at ¶ 14. Of course, if A.B. Data receives information for more than 35,000 Class Members, it will disseminate more Claim Packets in response to that additional information.

Co-Lead Counsel also propose to publish a summary notice in the form attached to the Stipulation Exhibit A-3, which provides an abbreviated but informative description of the Action and the proposed Settlement, and also explains how to obtain the more detailed Notice and Proof of Claim form. The Summary Notice will be published in *The Wall Street Journal*, *Investor's Business Daily* and over the *PR Newswire* on the Internet. Finally, all of the settlement documents, including the Notice and the Proof of Claim, will be posted on a dedicated website designed for this Settlement. *See* A.B. Data Decl. RE: Claims Process, Exhibit C, ¶ 22.

### C.    The Scope of the Notice Program is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *26 (S.D.N.Y. Jan. 31, 2007). It is clearly established that "notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *Id.* (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S. Ct. 785, 102 L.

Ed. 2d 777 (1989)).  In fact, notice programs such the Notice Program proposed by Co-Lead Counsel have been approved as adequate under Due Process and Rule 23 in a multitude of class action settlements.  *See, e.g., In re: Gilat Satellite Networks, Ltd.*, CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *41-*42 (E.D.N.Y. Apr. 19, 2007) (approving proposed notice program where notice mailed to shareholders of record listed on transfer records and to "more than 2,500" of the largest banks, brokerages, and other nominees); *In re Luxottica Group S.p.A. Sec. Litig.*, No. CV 01-3285 (JBW) (MDG), 2005 U.S. Dist. LEXIS 27765, at *4-*5 (S.D.N.Y. Nov. 15, 2005) (approving notice program, consisting of broker mailing and summary notice publication in *The Wall Street Journal* and the *New York Times*); *In re Prudential Secs. Ltd. P'shps. Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting mailing of notice to each identifiable Class Member's last known address is "a procedure that has been given wide-spread approval in other class actions").  *See also* the A.B. Data Decl., Exhibit C, ¶¶ 8, 11.

Here, by consulting with counsel for Defendants and the transfer agent (through counsel for Defendants), Co-Lead Counsel are ensuring that every known avenue for obtaining the identity of Class Members is being utilized to disseminate the Notice.  In addition, the significant statistics for ownership during the relevant time period demonstrate that the proposed Notice Program will reach the vast majority of Class Members.  These statistics demonstrate that out of the 66,291,376 shares of RenRe common stock outstanding on the first day of the Class Period, Cede & Co. held 95.7% of the shares.[8]  Similarly, for the last day of the Class Period, July 25, 2005, Cede & Co. held 95.5% of the 69,345,784 outstanding shares of RenRe common stock. Mellon Decl., Exhibit E, Footnote 2.  Therefore, it is reasonable to conclude that the Broker Mailing will reach the institutional and mutual fund owners.

---

[8]  *See* A.B. Data Decl. RE: Claims Process, ¶ 11, for an explanation of Cede & Co.

Furthermore, of the 2,838,906 shares registered to non-Cede & Co. accounts on April 22, 2003, a total of 1,586,385 of those shares were registered in various amounts to the individual named defendants, who are excluded from participation in this case. Mellon Decl., Exhibit E, ¶ 7. Therefore, only 1,252,521 shares were registered to non-insiders. Of those 1,252,521 shares, approximately 1,078,533 were received by individuals through stock option grants by the Company.[9] As a result, there are only approximately 173,988 shares held by individuals who are not either on one of the lists Co-Lead Counsel possess or held in a Cede & Co. account.[10] Therefore, it is also reasonable to conclude that through the combination of the Broker Mailing and the mailing to the individuals whose names appear on the transfer records, that the Notice Program will reach the vast majority of the Class Members.

Finally, also considering that numerous Courts have approved Notice Programs similar or identical to the Notice Program proposed here, Co-Lead Counsel respectfully submit that the proposed Notice Program is adequate.

### D. The Proposed Form of Notice Comports With the Requirements of Due Process and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved By Courts in This Jurisdiction

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, 99 Civ. 0962 (RCC) MDL No. 1283, Master Docket No. M-21-79 (RCC), 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006). *See also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the settlement notice

---

[9] Since the stock option grants were made at various times during the Class Period, and the other numbers being used for this calculation are from a set date, it is not possible to make an exact calculation cross-referencing the two sets of numbers.

[10] This number represents 0.26% of the shares outstanding on April 22, 2003.

must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per-share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the Court. *See* 15 U.S.C.A. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See Revised Notice*, Exhibit F. The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to exclude themselves from the Settlement, or to object to any aspect of the Settlement. *See Id.*, ¶¶13-15, 18-19. Furthermore, since the initial submission to the Court, Co-Lead Counsel have made some revisions to the Notice and Proof of Claim to make the ability of recipients to seek assistance from A.B. Data and/or Co-Lead Counsel more prominent. *See* highlighted portions in Revised Notice and Proof of Claim, Exhibit F, at pages 1, 2 and 5. Finally, the proposed format is the same or similar to

18

formats that have been approved by many other courts in this jurisdiction. *See, e.g.,* exemplar notices for three securities class action settlements approved in this jurisdiction, attached hereto as Exhibit G.  Therefore, Co-Lead Counsel respectfully submit that the Court should approve the form of Notice.

> E.    **The Requirement That Class Members Complete a Proof of Claim Form and the Information Required for Verification of the Claims**

During the Hearing, the Court also expressed concern for the burden that submitting their transactional data will place on individual Class Members and requested Co-Lead Counsel to explain why they cannot complete Proofs of Claim for the Class Members whose names appear on the transfer records.  First, none of the records in Co-Lead Counsel's possession provide information concerning if or when Class Members sold their RenRe common stock. A.B. Data Decl. Re: Claims Process, Exhibit C, ¶ 11; Mellon Decl., Exhibit E, ¶¶ 3-4. This information is necessary to determine the value of a claim.  Second, although the transactional information could theoretically be obtained from brokers for the 149 Class Members whose identities are in the possession of Co-Lead Counsel, this procedure would initially require two more steps: Co-Lead Counsel would need to find out which broker or bank holds the records for each such Class Member and more importantly, would need to obtain permission from each Class Member to (a) obtain the records from the broker or bank and (b) submit a proof of claim for the Class Member.

With respect to the first issue, while brokers and banks must provide records to their clients free of charges, these institutions typically charge substantial sums to undertake records searches in the context of class actions.  A.B. Data Decl., ¶ 31.  Furthermore, where experience demonstrates that the vast majority of Class Members are able to obtain their documentation and complete proof of claim forms, it should be deemed unnecessary for the Class to bare the burden of these costs.  *Id.* ¶¶ 30-31.  As a solution to this issue, A.B. Data has proposed that if the Class

19

should bare such a cost, it should be for Class Members who try but fail to undertake documentation of their claims on their own. Specifically, the letter that will be sent to Class Members whose claims are deficient due to the deficiency of their documentation will offer assistance in obtaining brokers' records. *Id.* ¶ 32. In this circumstance, the Class Members are likely to be more cooperative and responsive, and the process will therefore be less costly and more productive for the Class because it will be undertaken for Class Members who need and have sought assistance. With respect to the latter issue, Co-Lead Counsel cannot submit claims for Class Members who take no affirmative step to participate because filing a claim is an individual's right and the process presumes that some Class Members will choose not to participate individually through requesting exclusion from the Settlement.

## IV.    DEPOSIT OF THE SETTLEMENT FUND INTO THE COURT REGISTRY INVESTMENT SYSTEM

At the Hearing, the Court requested that Co-Lead Counsel provide an analysis of whether it would be appropriate for the Settlement Fund to be deposited into escrow into the Court Registry Investment System ("CRIS account") rather than an escrow account with a private bank. As explained below, Co-Lead Counsel have determined that deposit of the Settlement Fund into a CRIS account will generate much higher fees than will deposit of the funds into an escrow account at a private bank.

In an effort to discern which type of escrow account would generate the lowest fees, Co-Lead Counsel spoke with Michael Linver in the cashier's office at the Southern District of New York to learn the specifics of how CRIS accounts are administered. Mr. Linvers explained that the money is invested through the United States District Court for the Southern District of Texas (S.D.Tex.) and is invested for the District by Chase Bank, also located in the S.D.Tex. The money is invested in short-term Treasury bills according to a varying weekly interest rate. The

court charges and automatically deducts a fee of 10% of the interest that accrues on the account on a weekly basis to cover all escrow and investment fees.  Joint Decl., ¶ 9.

In contrast, Citigroup, located in New York, New York, where Co-Lead Counsel propose to establish an escrow account for the benefit of the Class, will also invest the Settlement Fund in short-term Treasury bills.  However, Citigroup charges significantly less than the CRIS account for its services as custodian of the settlement funds.  Citigroup charges an annual fee of 0.25% of the first $1 million of market value, 0.20% on the second $1 million of market value, 0.15% on the third $1 million of market value, and 0.05% on the balance (here, on $10.5 million), paid monthly.  If we accept as fact that the money will be in escrow for one year, the fee for the CRIS account will approximately $67,500 for the year, assuming a 5% return on the money, while Citigroup will charge only $11,250 for the year.  Joint Decl., ¶ 9.  Therefore, Co-Lead Counsel respectfully submit that it would be more advantageous to the Class to deposit the Settlement Fund into an escrow account at Citibank, or another similarly located private bank in New York City which agrees to the same fee arrangement.[11]

## V.    PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, the Parties respectfully submit the following procedural schedule for the Court's review:

| Event | Time for Compliance |
|---|---|
| Deadline for Mailing of Notice and Proofs of Claim to Class Members (the "Notice Date") | 15 calendar days after entry of the Court's entry of the Proposed Order for Notice and Hearing (proposed Order, &12) |

---

[11]  The Court also ordered that the Parties provide that any unclaimed funds escheat to the federal government.  The Parties will provide for the unclaimed funds to escheat to the federal government.

| Deadline for publishing Summary Notice in *The Wall Street Journal*, *Investor's Business Daily*, and over the *PR Newswire*, and for placing the Summary Notice on the website devoted to the Settlement. | 10 calendar days of the Notice Date (proposed Order, &14) |
|---|---|
| Deadline for Filing Proofs of Claim | 90 days following the Notice Date (proposed Order, &18) |
| Deadline for Submitting Exclusion Requests or Objections | 50 calendar days following the Notice Date (proposed Order, &&16, 17) |
| Filing of memoranda in support of approval of the Settlement or Plan of Allocation, or in support of Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses | 7 days before the Settlement Hearing (proposed Order, &22) |
| Settlement Hearing | Approximately 90 days following execution of the proposed Preliminary Order, or later at the Court's convenience (proposed Preliminary Order, & 8) |

Certain of the events set forth above are tied to the date on which the Settlement Fairness Hearing will be held, which the Parties respectfully request to be scheduled for approximately ninety (90) days after the entry of the proposed Order for Notice and Hearing. If this schedule is not convenient for the Court, the Parties request that the Court use at least the same or greater intervals between each event listed in the proposed schedule to provide all Parties sufficient time to comply with the proposed Order for Notice and Hearing.

VI.    **CONCLUSION**

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the proposed Order for Notice and Hearing in connection with the Settlement proceedings, which will provide: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of giving notice of the Settlement to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

DATED:  July 31, 2007

Respectfully submitted,

/S/ Samuel H. Rudman
Samuel H. Rudman
**LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
58 South Service Road, Suite 200
Melville, NY  11747
Tel.:  (631) 367-7100
Fax:  (631) 367-1173

Kay E. Sickles
Eric Lechtzin
**SCHIFFRIN BARROWAY TOPAZ
& KESSLER, LLP**
280 King of Prussia Road
Radnor, PA  19087
Tel.:  (610) 667-7706
Fax:  (610) 667-7056

*Co-Lead Counsel for Lead Plaintiffs
and the Class*