UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re RENAISSANCERE HOLDINGS LTD.          :     Master File No. 1:05-cv-06764-WHP
SECURITIES LITIGATION                       :
                                            :     **ELECTRONICALLY FILED**
————————————————————        :
                                            :     CLASS ACTION
This Document Relates To:                    :
                                            :     LEAD PLAINTIFFS' MEMORANDUM OF
        ALL ACTIONS.                         :     LAW IN SUPPORT OF MOTION FOR
                                            x     FINAL APPROVAL OF SETTLEMENT
———————————————————— x     AND PLAN OF ALLOCATION OF
                                                  SETTLEMENT PROCEEDS

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. HISTORY AND BACKGROUND OF THE ACTION .....................................................4

III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE
AND SHOULD BE APPROVED BY THE COURT..........................................................5

    A. The Law Favors and Encourages Settlements .........................................................5

    B. The Settlement Is Procedurally Fair ......................................................................6

    C. The Second Circuit's Standards Governing the Substantive Fairness of
    Class Action Settlements ......................................................................................7

    D. The Settlement Satisfies the Second Circuit Criteria for Approval.......................8

        1. The Complexity, Expense and Likely Duration of the Litigation
        Justifies the Settlement ................................................................................8

        2. The Reaction of the Class to the Settlement ..............................................10

        3. The Stage of the Proceedings and Discovery Completed...........................10

        4. The Risk of Establishing Liability .............................................................12

            a. Defendants' Defenses to Materiality and Scienter.........................14

            b. Defenses to Loss Causation .........................................................15

        5. The Considerable Risk of Establishing Damages.......................................16

        6. The Risks of Maintaining the Class Action Through Trial.........................18

        7. The Reasonableness of the Settlement in Light of the Best Possible
        Recovery and the Attendant Risks of Litigation........................................18

        8. The Ability of the Defendants to Withstand a Greater Judgment...............20

IV. THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND
REASONABLE AND SHOULD BE APPROVED BY THE COURT ...........................20

V. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET
AND THE CLASS SHOULD BE CERTIFIED................................................................22

    A. Numerosity, Commonality and Typicality .........................................................22

**Page**

    B.        Adequacy of Representation ...................................................................................23

    C.        Predominance of Common Issues and Superiority ................................................24

VI.    CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)............................................................................22, 23, 24

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978)..........................................................................21

*Berger v. Compaq Computer Corp.,*
    257 F.3d 475 (5th Cir. 2001) ..........................................................................18

*Carpe v. Aquila, Inc.,*
    No. 02-0388-CV-W-FJG (W.D. Mo. Mar. 23, 2005)......................................17

*Chatelain v. Prudential-Bache Sec.,*
    805 F. Supp. 209 (S.D.N.Y. 1992)............................................................12, 18

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)................................................................................6

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)..............................................................6, 7, 12, 20

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)........................................................................................15

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,*
    343 F.3d 189 (2d Cir. 2003)............................................................................15

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976)........................................................................................13

*In re "Agent Orange" Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984) .................................................................18

*In re Am. Bank Note Holographics,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................12, 20

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
    No. 1500, 2006 U.S. Dist. LEXIS 17588
    (S.D.N.Y. Apr. 6, 2006)............................................................................13, 19

**Page**

*In re Ashanti Goldfields Sec. Litig.*,
    No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431
    (E.D.N.Y. Nov. 15, 2005)...........................................................................5

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000),
    *aff'd sub nom. D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).......................................................................10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)......................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................8, 10, 19, 21

*In re Holocaust Victim Assets Litig.*,
    413 F.3d 183 (2d Cir. 2001)......................................................................21

*In re Host Am. Corp. Sec. Litig.*,
    No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418
    (D. Conn. Oct. 18, 2007)..........................................................................23

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
    (S.D.N.Y. Sept. 29, 2003) ...........................................................14, 16, 18

*In re Interpublic Sec. Litig.*,
    Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429
    (S.D.N.Y. Oct. 27, 2004) ..........................................................................19

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ...................................................5, 6, 7, 10

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................13

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.),
    *aff'd*, 117 F.3d 721 (2d Cir. 1997) ........................................... *passim*

*In re Salomon Analyst Metromedia Litig.*,
    236 F.R.D. 208 (S.D.N.Y. 2006) ...............................................................24

**Page**

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ..................................................................................14

*In re Veeco Instruments, Inc., Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................ *passim*

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)..............................................................................24

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................................20

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..............................................................................20

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    aff'd, 798 F.2d 35 (2d Cir. 1986).....................................................................17

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).......................................................20, 21

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)................................................................................5

*Kaufman v. Motorola, Inc.*,
    No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
    (N.D. Ill. Sept. 21, 2000) .................................................................................17

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) .......................................................................13

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................................20, 22

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984) ....................................................................8

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972).........................................................................6, 18

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..............................................................................13

Page

*Plummer v. Chem. Bank*,
    668 F.2d 654 (2d Cir. 1982)......................................................................11

*Schwartz v. Novo Industri A/S*,
    119 F.R.D. 359 (S.D.N.Y. 1988) .............................................................12

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................8, 9

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 WL 1087261
    (S.D.N.Y. May 14, 2004)........................................................................9, 12

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976)..................................................................................14

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................5

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..........................................................................5

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ...............................................................13

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4(a)(3)(B)(i) ....................................................................................23

Federal Rules of Civil Procedure
    Rule 23(a)......................................................................................4, 22, 24
    Rule 23(a)(1)-(3)......................................................................................22
    Rule 23(a)(4).............................................................................................23
    Rule 23(b)(3)...................................................................................1, 4, 22, 24
    Rule 23(e)....................................................................................1, 4, 5, 22
    Rule 23(b)(3).............................................................................................24

**Page**

**SECONDARY AUTHORITIES**

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
 §11.45................................................................................................................................10

Laura E. Simmons, Ellen M. Ryan, (Cornerstone Research 2006)
*Post-Reform Act Securities Settlements,*
*2005 Review and Analysis* ..............................................................................................19

Pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs, District No. 9, I.A. of M. & A.W. Pension Trust, Pension Trust Fund for Operating Engineers, and Joseph Moss ("Lead Plaintiffs"), by and through their counsel ("Lead Plaintiffs' counsel"), respectfully move this Court for an order approving the proposed settlement of the above-captioned class action (the "Action"), certifying the Class for settlement purposes, and approving the proposed Plan of Allocation of settlement proceeds, each of which this Court preliminarily approved by its Order for Notice and Hearing, filed September 12, 2007 (the "Preliminary Approval Order").

## I.     PRELIMINARY STATEMENT

Under the terms of the proposed settlement (the "Settlement"), as set forth in the Stipulation of Settlement dated as of April 13, 2007 (the "Stipulation"), the Defendants have caused to be paid Thirteen Million Five Hundred Thousand Dollars ($13,500,000) in cash (the "Settlement Amount") into an interest-bearing escrow account maintained by the Court Registry Investment Service ("CRIS") on behalf of the Class, in exchange for the dismissal of all claims brought against the Defendants in this Action and a full release of claims.[1]  The Settlement Fund will be used for the payment of taxes, notice and administrative costs and for attorneys' fees and expenses.  The cash remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who are not otherwise excluded and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants").  Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Proposed

---

[1]     *See* ¶3 of the Joint Declaration of Kay E. Sickles and Samuel H. Rudman in Support of Lead Plaintiffs' Motion for Final Approval of Settlement, Plan of Allocation and the Application for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Joint Decl."), submitted herewith.

Settlement of Class Action, Motion for Attorneys' Fees and Reimbursement of Expenses and Settlement Hearing (the "Notice") at pages 3-4. *See* La Count Aff., Ex. A.[2]

Lead Plaintiffs' counsel respectfully submit that this Settlement is an excellent recovery for the Class under the circumstances, representing approximately 16% of the Class's maximum provable damages as calculated by Lead Plaintiffs' damage expert.[3] This Settlement was reached by Lead Plaintiffs' counsel, with the support of the Lead Plaintiffs, as a result of their creative and aggressive litigation efforts. When viewed in light of the risks that the Court would not sustain the Second Amended Consolidated Class Action Complaint ("SAC") upon Defendants' motions to dismiss, or that Defendants could prevail on summary judgment or at trial, based on their strong defenses to materiality, loss causation and scienter, the Settlement is a substantial result for the Class. The Settlement also saves the Class the considerable expense and delay posed by continued litigation, especially here, where formal discovery had not yet begun and where most of the documentary evidence and most of the witnesses relevant to the case are located in Bermuda. As fully discussed below and in the Joint Declaration, the significant risks involved in taking this Action further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, support approval of this Settlement.

---

[2]    Class Members who submit valid, timely Proof of Claim and Release forms will also be entitled to share in a $15,000,001 SEC Fair Fund created in the civil enforcement action brought by the SEC against certain of the defendants in this Action. If approved by the court in which that action is pending, the SEC Fair Fund will be distributed simultaneously with the Net Settlement Fund created in this litigation, *pro rata*, to Class Members.

[3]    Lead Plaintiffs' expert calculated the maximum provable damages as $83,843,595. Thus, through the combination of the Settlement Fund in this action and the SEC Fair Fund, the Class will recover approximately 34% of the calculated damages. *See* Joint Decl., ¶27, n.6.

On September 12, 2007, the Court entered its Preliminary Approval Order, which directed that a hearing be held on January 11, 2008, to determine the fairness, reasonableness and adequacy of the Settlement (the "Settlement Hearing").  Pursuant to the Preliminary Approval Order, the Notice was mailed to over 52,000 potential Class Members commencing on September 25, 2007.[4] Also in accordance with the Preliminary Approval Order, the Notice, the Proof of Claim and Release form, the Summary Notice, the Stipulation and the Electronic Claims Filing Guidelines were posted on the Claims Administrator's website.  The Summary Notice was also published in the national edition of *The Wall Street Journal*, in the *Investor's Business Daily* and over the PR Newswire on October 5, 2007.  *See* La Count Aff., ¶¶14-15.

The Notice, attached to the La Count Affidavit as Exhibit A, contained a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including: (i) Lead Plaintiffs' estimate of the average per share recovery; (ii) the manner in which the Net Settlement Fund (as defined below) will be allocated among participating Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to opt-out or exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement.

The reaction of Class Members to the Settlement confirms the wisdom of Lead Plaintiffs' decision to resolve the Action against the Defendants in exchange for the payment of the Settlement Amount.  As of the date preceding the filing of this Memorandum, which is after the deadline for the submission of objections or requests for exclusion, no objections have been filed to the amount of

---

[4]    *See* ¶¶6-11 of the Affidavit of Michelle M. La Count, Securities Account Supervisor for A.B. Data, Ltd., the Claims Administrator in this Action (the "La Count Aff."), which is attached as Exhibit 2 to the Joint Declaration submitted herewith.

the Settlement or the Plan of Allocation. Also, not a single Class Member has submitted a valid request for exclusion from the proposed Settlement.[5] Therefore, the reaction of the Class strongly supports the inference that the Class agrees that the Settlement and Plan of Allocation are fair, reasonable and adequate.

In light of Lead Plaintiffs' counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted, the absence of opposition to the Settlement, the considerable risks and delays associated with continued litigation and trial, and the significant recovery relative to the estimated maximum provable damages, Lead Plaintiffs and Lead Plaintiffs' counsel believe that the Settlement is eminently fair, reasonable and adequate and provides a substantial result for the Class. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of this Settlement. In addition, the proposed Class meets all of the elements of Federal Rule of Civil Procedure 23(a) and (b)(3); therefore, the Court should grant final certification of the Class. Finally, the Plan of Allocation, which was developed with the assistance of Lead Plaintiffs' damage consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

## II.    HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Joint Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the extensive litigation efforts of Lead Plaintiffs' counsel, and a discussion of the negotiations leading to this Settlement.

_____

[5]    On November 16, 2007, the Claims Administrator received a request for exclusion that did not comply with the requirements for submitting such requests because it failed to provide information concerning the claimant's purchases and sales of RenaissanceRe common stock during the Class Period. A letter was sent to the Class Member requesting additional information, but the Class Member did not respond to the letter. La Count Aff., ¶17. As such, the request for exclusion is not valid.

- 4 -

### III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

#### A.    The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court.  The court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion."  *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement."  *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 65372, at *26 (S.D.N.Y. Sept. 5, 2007).  While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions.  *In re Veeco Instruments Inc. Sec. Litig.*, 05 MDL 01697 (CM), 2007 U.S. Dist. LEXIS 85629, at *16 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *13-*14 (S.D.N.Y. Jan. 31, 2007).  *See also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.).  Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."  *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a

proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *17. As stated by the court in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.'"

*Id.* at 691-92 (citation omitted).

## B.    The Settlement Is Procedurally Fair

A strong initial presumption of fairness attaches to the proposed settlement if it is reached by experienced counsel after arm's-length negotiations with a neutral mediator, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Group*, 233 F.R.D. at 315; *see also In re Alloy, Inc. Sec. Litig.*, 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *5 (S.D.N.Y. Dec. 2, 2004). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997). "Moreover, under the PSLRA, a settlement reached – as this one was – under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness. . . . Absent fraud or collusion, the court should be hesitant to

- 6 -

substitute its judgment for that of the parties who negotiated the settlement.'" *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *17-*18 (citation omitted).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations with the assistance of a highly experienced mediator. Joint Decl., ¶¶24-26. In addition, no question exists that Lead Plaintiffs' counsel – equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiffs' claims – were fully informed of the merits and weaknesses of the case by the time the Settlement was consummated. Further, Lead Plaintiffs' counsel engaged in substantial informal discovery, reviewing over 98,000 pages of documents produced by the Defendants, in order to confirm the reasonableness of the Settlement. *See* Joint Decl., ¶¶19-23. Thus, little doubt exists that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

## C. The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair, whether the proposed settlement is "'fair, reasonable, and adequate.'" *Luxottica Group*, 233 F.R.D. at 310 (citation omitted). The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). All nine factors need not be satisfied. Instead, the court should look at the totality of these factors in light of the specific circumstances involved. *In re*

- 7 -

*Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423, at *25-*26 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above. Indeed, this Settlement represents an excellent recovery for the Class, and, in the judgment of Lead Plaintiffs' counsel, there is serious doubt that a more favorable result was possible. As such, the Settlement clearly warrants this Court's final approval.

**D.    The Settlement Satisfies the Second Circuit Criteria for Approval**

**1.    The Complexity, Expense and Likely Duration of the Litigation Justifies the Settlement**

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'") (citation omitted). Here, the securities claims advanced by Lead Plaintiffs involve numerous complex legal and factual issues relating to the reinsurance industry, specific reinsurance transactions entered into by RenaissanceRe, and the complicated accounting treatment applied to the Company's balance sheet, which would require extensive discovery, including voluminous document review and many depositions as well as extensive expert discovery and testimony. In addition, the legal issues in this Action are equally as complex – proving falsity, materiality, scienter, causation and damages – and would also require expert testimony from both sides. Joint Decl., ¶¶36-37.

RenaissanceRe's status as a foreign corporate defendant would further serve to complicate the litigation process. As a threshold matter, RenaissanceRe's main corporate headquarters is

located in Bermuda. Ongoing litigation would necessitate researching and complying with foreign law and navigating through the complicated rules and procedures of international law, such as the Hague Convention. Also, the cooperation of witnesses, beyond the subpoena power of the Court, could prove illusive. Joint Decl., ¶36. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (approving settlement in action against foreign company, where many of the defendants, witnesses and documents were located abroad, beyond the court's subpoena power). *See also In re Gilat Satellite Networks, Ltd.*, CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964, at *31 (E.D.N.Y. Sept. 18, 2007) (finding the costs of litigating against foreign defendant to be 'significant' due to increased costs and complexity of discovery). There can be no doubt that because this Action is settling against the Defendants at this time, the litigants have been spared the delay and expense of continued litigation. Many hours of the Court's time and resources have also been spared. Even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value. *See Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The Settlement, for $13,500,000, at this juncture, results in an immediate and substantial tangible recovery without the considerable risk, expense and delay of trial. Lead Plaintiffs' counsel submit that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2.  The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Group*, 233 F.R.D. at 311-12. One court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *21 (citation omitted). Here, in response to a wide-ranging notice program, not a single Class Member has objected, and only one person, whose request was invalid, has requested exclusion from the Class. Thus, the reaction of the Class, those affected by the Settlement, underscores the propriety of the Settlement and should provide additional comfort to this Court in approving the Settlement. Joint Decl., ¶38.

### 3.  The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002). As previously noted, "[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Global Crossing*, 225 F.R.D. at 458. *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (not necessary for

court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)); *see also Veeco*, 2007 U.S. Dist. LEXIS 85629, at \*22-\*23 ("the parties need not have engaged in full discovery for a settlement to be approved as fair").[6]

Here, Lead Plaintiffs' counsel negotiated a substantial settlement only after conducting an extensive factual investigation and analysis relating to the events and transactions alleged in the SAC. Lead Plaintiffs' counsel reviewed scores of publicly available documents and RenaissanceRe's regulatory filings to gain a full and complete understanding of the reinsurance industry and transactions entered into by the Company, as well as the elements of the Company's restatement of earnings. Lead Plaintiffs' counsel also researched the applicable law with respect to Lead Plaintiffs' claims and the Defendants' potential defenses, interviewed confidential witnesses and former RenaissanceRe employees, consulted with forensic accountants and damage experts, and prepared an extensive mediation statement. Following the agreement-in-principle to settle the litigation, Lead Plaintiffs' counsel negotiated for and received more than 98,000 pages of non-public information produced by RenaissanceRe to the SEC in connection with its investigation of the Company. Joint Decl., ¶¶19-21. In sum, these documents included: internal company memoranda and electronic correspondence; documents reflecting reinsurance arrangements with various companies; documents reflecting RenaissanceRe's accounting policies and procedures; business plans and large deal update reports for the relevant time period; power point presentations regarding RenaissanceRe's business and the reinsurance industry generally prepared for financial services and investment conferences as well as presentations tailored for specific securities and industry analysts;

---

[6]    In fact, in cases such as this one brought under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), no formal discovery may proceed until the motion to dismiss is denied.

RenaissanceRe Board of Director materials and resolutions; financial statements cash flow summaries and related notes; SEC filings, press releases, and drafts thereof; documents reflecting the services of Ernst and Young; public information regarding the reinsurance industry, Catastrophe Bulletins containing preliminary estimates of insured property damage in particular states, and analyst reports; Trust and Assignment Agreements between RenaissanceRe and Inter-Ocean; and Inter-Ocean documents for years 1998 through 2004.    Joint Decl., ¶21.    Thus, Lead Plaintiffs' counsel had a clear picture of the strengths and weaknesses of their case and of the legal and factual defenses that Defendants would likely raise at trial.    *Teachers' Ret. Sys.*, 2004 WL 1087261, at *3 (citation omitted) (finding action had advanced to stage where parties "'have a clear view of the strengths and weaknesses of their cases'"); *see also Heyer v. N.Y. City Hous. Auth.*, 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089, at *9 (S.D.N.Y. Apr. 28, 2006) (although limited discovery was completed before settlement negotiations began, familiarity of counsel for all parties with case justifies settlement).    As such, Lead Plaintiffs' counsel had sufficient information to intelligently negotiate the terms of the Settlement that is before the Court for approval.    *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213 (S.D.N.Y. 1992) (noting "'the absence of formal discovery has not . . . prevented consideration of settlement'" (quoting *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 362 (S.D.N.Y. 1988)).    Therefore, this Court should find that this factor also supports the Settlement.

### 4.    The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery against the continuing risks of litigation.    *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *25; *Austrian & German Bank*, 80 F. Supp. 2d at 177.    While Lead Plaintiffs' counsel believe that Lead Plaintiffs could survive Defendants' motions to dismiss and for summary judgment, they recognize that ultimate success is

not assured, and further believe that this substantial Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

Lead Plaintiffs faced numerous hurdles to establishing liability. This Action involves claims for relief under the Securities Exchange Act of 1934 (the "Exchange Act"). To prevail on their claims, Lead Plaintiffs must demonstrate that Defendants made misstatements or omissions of material fact with scienter in connection with the sale or purchase of securities – that Defendants intentionally engaged in this conduct for the purpose of misleading investors.[7] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Due to the defenses that Defendants have raised, Lead Plaintiffs' counsel recognize that establishing liability at trial would by no means be guaranteed. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1500, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6, 2006) ("[t]he difficulty of establishing liability is a common risk of securities litigation").

---

[7] Proof of scienter can be established: "'(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Whalen v. Hibernia Foods PLC*, 04 Civ. 3182, 2005 U.S. Dist. LEXIS 15489, at *6 (S.D.N.Y. Aug. 1, 2005) (citation omitted). Although recklessness has been held to satisfy the scienter requirement, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000), this too is a difficult standard.

### a.    Defendants' Defenses to Materiality and Scienter

Lead Plaintiffs faced significant risks in proving that the alleged misstatements were material. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 264 (2d Cir. 1993) (to prove materiality, plaintiffs have burden of demonstrating defendants' misrepresentations and omissions were materially false or misleading when made); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). In defense of materiality, Defendants asserted that the effect of RenaissanceRe's restatement – the deferral of approximately $26.2 million in earnings from 2001 to 2002 and 2003 – hardly had the effect of "smoothing" RenaissanceRe's net income, which in the aggregate exceeded $1.16 billion during the period of 2001 through 2003, and had absolutely no effect on the Company's balance sheet. Joint Decl., ¶34.

Defendants similarly have maintained throughout the Action that Lead Plaintiffs will fail to establish scienter. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving scienter). In support of this defense, Defendants contend that the Company's voluntary and proactive commencement of an internal investigation, which ultimately uncovered the incorrect accounting applied to the Inter-Ocean transactions and resulted in the Company's restatement, undermines Lead Plaintiffs' allegations that Defendants deliberately structured sham assignment and reinsurance agreements with Inter-Ocean. Defendants further contend that Lead Plaintiffs' allegations that the Company intentionally misapplied Statement of Financial Accounting Standards ("SFAS") No. 113 – an accounting standard so complex that at the time of the mediation it was under review by the Financial Accounting Standards Board – is incorrect, and that the misapplication of SFAS No. 113 to the Inter-Ocean transactions was not intentionally done to "smooth earnings" and defer income. Defendants argued that the "smoothing" had the effect of holding back income from a *less* profitable year and accounting for it in a *more* profitable year. Finally, Defendants assert that Lead Plaintiffs

- 14 -

cannot point to any suspicious circumstances concerning the timing or amount of Defendants' "insider" stock sales. Joint Decl., ¶35. In fact, by the time the parties agreed to the proposed Settlement, Lead Plaintiffs' counsel had come to the conclusion that the defenses to both materiality and scienter could have certain jury appeal, and would render the inherently difficult burden of proving all of the elements of Lead Plaintiffs' claims as to all of the Defendants even more difficult. In fact, apart from the insider sales detailed in the SAC, Lead Plaintiffs' counsel had not yet discovered documentary evidence that proved reckless or intentional conduct, and would be forced to wait until depositions began to attempt to support this element of Lead Plaintiffs' claims. A small number of the documents produced by Defendants could possibly be used by Defendants in defense against Lead Plaintiffs' scienter argument. Joint Decl., ¶22.

### b.     Defenses to Loss Causation

Even if Defendants' defenses to materiality and scienter could be overcome, Lead Plaintiffs must also make the requisite showing of loss causation. *See, e.g.*, *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 196-97 (2d Cir. 2003) (finding that plaintiffs adequately plead loss causation and proximate causation). Lead Plaintiffs faced an uphill battle to prove loss causation, *i.e.*, that Defendants' fraud caused Lead Plaintiffs and the Class to suffer economic loss. Under the Supreme Court's holding in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." Defendants viewed their strongest defense that Lead Plaintiffs had not, and could not, properly account for the damages attributable to Defendants' alleged misrepresentations. Specifically, Defendants argued that when RenaissanceRe announced the restatement of its financial results due to the Inter-Ocean transactions, on February 22, 2005, the price of RenaissanceRe stock did not decline. Joint Decl., ¶32. Moreover, Defendants claimed that the Company's announcement of Cash's resignation on July 11, 2005, and the SEC's issuance of a

- 15 -

Wells Notice to Standard on July 25, 2005, precipitating price drops of 1.15% and 9%, respectively, resulted from new developments in the course of the SEC investigation and "the cloud of uncertainty over RenaissanceRe's management that developed during the [SEC] investigation," and were not a result of any corrected misstatements by the Company. *Id.* While Lead Plaintiffs remained confident in their ability to ultimately prove their claims and to counter any asserted affirmative defense, the risks of this Action being dismissed at the motion to dismiss or summary judgment stage, or of losing at trial, weighed against the immediate and substantial benefits of settlement, indicate that the Settlement is in the best interest of the Class.

### 5.    The Considerable Risk of Establishing Damages

Even if they successfully established liability, Lead Plaintiffs also faced substantial risk in proving the existence and the amount of damages. *See Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *11-*12 (noting difficulty of proving damages in securities cases). In order to prevail on their Exchange Act claims, Lead Plaintiffs' counsel would be required to prove that the Defendants' false and misleading statements inflated the price of RenaissanceRe common stock, and would also be required to prove the amount of the artificial inflation. Lead Plaintiffs' counsel, with the assistance of their economic consultant, calculated the artificial inflation in the market price of RenaissanceRe, that in their opinion is attributable to the alleged wrongdoing. This figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable. It also assumes that the Class Period would remain as alleged, and not the shorter Class Period urged by Defendants. As such, its viability as an actual calculation for damages could be affected by many factors that arise in the Action, such as Defendants' rebuttals and defenses to Lead Plaintiffs' damage calculations and expert testimony. Joint Decl., ¶33.

The presentation of damages is a complex matter which would require the presentation of expert testimony. As a result, Lead Plaintiffs' counsel already know that the Class will ultimately

face a "battle of experts" – a battle in which no party is ever assured to prevail. While Lead

Plaintiffs' counsel believe that reliable and convincing expert testimony can be provided on the

damages question, and that a judgment could ultimately be obtained for the full amount of damages

available under the law, meaningful obstacles remain. First, the Court must determine that Lead

Plaintiffs' damages model is admissible - and only then may a jury determine whether Lead

Plaintiffs' or Defendants' model is more accurate. The Class is by no means assured of a ruling in

their favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG (W.D. Mo. Mar. 23, 2005)

(granting defendants' motion to exclude plaintiffs' expert testimony);[8] *Kaufman v. Motorola, Inc.*,

No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding in part

plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury

might disagree with the Class's expert, or merely find Defendants' expert more persuasive.[9] As a

result of the aforementioned considerations, the likelihood of proving damages, even assuming the

Class prevailed on the liability issue, is somewhat difficult. *See Veeco*, 2007 U.S. Dist. LEXIS

85629, at *29. As a result, this factor also weighs in favor of the Settlement.

---

[8]     All unreported orders referred to herein are attached as Exhibit 5 to the Joint Declaration
submitted herewith.

[9]     *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of
damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985)
("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony
would be credited, and ultimately, which damages would be found to have been caused by
actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*,
798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001)
("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the
jury would believe").

### 6.    The Risks of Maintaining the Class Action Through Trial

If the Settlement had not been reached, there would be no assurance of maintaining Class status, since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See Chatelain*, 805 F. Supp. at 214 ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation).    Here, Defendants maintained that the Class Period was improperly stated, and that it should be significantly shorter.    As a result, Lead Plaintiffs' counsel expect that Defendants would oppose class certification (as opposed to some securities class action where the parties stipulate to the class) and they would thereafter seek to have the Class decertified if their defenses were initially unsuccessful.    The Settlement avoids any uncertainty with respect to these issues.

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984).  "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *33.  The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried before jury result in full amount of damages claimed). *See also*

*In re Interpublic Sec. Litig.*, Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *24 (S.D.N.Y. Oct. 27, 2004) ("while the Gross Settlement Fund reflects only ten to twenty percent of lead plaintiff's aggressive damages estimate, the securities settlement sits comfortably within the range of reasonableness"); *Global Crossing*, 225 F.R.D. at 461 ("Due to the complexities inherent in this case, the certainty of this settlement amount has to be judged in this context of the legal and practical obstacles to obtaining a large recovery."); *Gilat*, 2007 U.S. Dist. LEXIS 68964, at *36-*37 (Settlement fund representing "10.6% of the maximum amount which Plaintiffs believe could be recovered at trial . . . is within the range of settlements that have been awarded in securities class actions." (and citing studies)).

Here, Lead Plaintiffs' counsel have recovered approximately sixteen percent of the maximum provable damages as calculated by their expert. This recovery, as a percentage of recoverable damages, is far above the median recoveries in post-PSLRA securities class action settlements. *See* Laura E. Simmons, Ellen M. Ryan, *Post-Reform Act Securities Settlements, 2005 Review and Analysis* (Cornerstone Research 2006) (the median recovery rate of estimated damages of securities cases with estimated damages between $50-$125 million is 5%). Joint Decl., Ex. 6 at 5.

Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road, without any further risk to the Class. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). In light of the complex legal and factual issues typically present in securities class actions, the unpredictability of a lengthy and complex trial and the appellate process that would most likely follow, the fairness

of a substantial settlement is clearly apparent.  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).[10]

### 8.    The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement.  *Grinnell*, 495 F.2d at 463.  The fact that RenaissanceRe could have paid more money does not render the Settlement unreasonable, however.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached.").

Accordingly, Lead Plaintiffs' counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

### IV.    THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'"  *Maley*, 186 F. Supp. 2d at 367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005).  "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case."  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted).  A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *Am. Bank Note*, 127 F. Supp. 2d at 429-30 (citation omitted); *see also*

---

[10]    Not surprisingly, Defendants calculated damages, if any, at significantly less than Lead Plaintiffs.

*WorldCom*, 388 F. Supp. 2d at 344 (same).  Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Plaintiffs' counsel, in consultation with damage experts, ensuring its fairness and reliability.  Joint Decl. ¶48.  *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39.  Under the proposed Plan of Allocation, each Authorized Claimant (as defined in ¶1.1 of the Stipulation) will receive a *pro rata* share of the "Net Settlement Fund" (*i.e.*, the settlement consideration less taxes, approved costs, fees and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.[11]

The Plan of Allocation takes into account when Class Members purchased and when and whether Class Members sold their RenaissanceRe common stock.  Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions.  This is fair and reasonable, as there is no rule that a settlement benefit all class members equally.  *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39; *Global Crossing*, 225 F.R.D. at 462.  Indeed, it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.  *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001).  Otherwise, certain class members may receive an inequitable windfall, to the detriment of others.  *PaineWebber*, 171 F.R.D. at 133.

---

[11]    The SEC has determined that it will use the Plan of Allocation approved in this Action for the distribution of the SEC Fair Fund.

Lead Plaintiffs' counsel believe that the Plan of Allocation is fair and reasonable, and respectfully submit that it should be approved by the Court. It should be noted that not one objection to the Plan of Allocation has been filed, which also supports approval by the Court. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *40; *Maley*, 186 F. Supp. 2d at 367.

## V.    THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

The parties have stipulated to certification of the Class for settlement purposes.[12]    The ultimate decision regarding certification, however, rests with the Court. In its September 12, 2007 Preliminary Approval Order, the Court conditionally certified the Class for purposes of settlement. Because all the requirements for class certification have been met, *see* Federal Rule of Civil Procedure 23(a), (b)(3), and in light of the substantial benefits the Settlement confers on the Class, Lead Plaintiffs respectfully request that the Court now grant this Action final class certification for the purposes of the Settlement.

### A.    Numerosity, Commonality and Typicality

The Class meets the numerosity, commonality, and typicality standards of Rule 23(a)(1)-(3). Over 52,000 copies of the Notice were sent to potential Class Members who purchased RenaissanceRe common stock between April 22, 2003 through July 25, 2005, inclusive. *See La Count Aff.*, ¶¶10-11. *See also Cross v. 21st Century Holding Co.*, 00 Civ. 4333 (MBM), 2004 U.S. Dist. LEXIS 2283, at *4 (S.D.N.Y. Feb. 18, 2004) ("[c]ommon sense dictates" that class members in securities cases exceed 100). Moreover, there are substantial questions of law and fact common to all Class Members (*e.g.*, whether Defendants violated the federal securities laws and whether

---

[12]    The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of a class action. The Supreme Court has expressly approved the use of this device. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).

members of the Class sustained damages as a result of the misrepresentations and/or omissions, and the extent of those damages). Joint Decl., ¶¶43-44.

In *Amchem*, 521 U.S. at 625, the Supreme Court noted that the common issues test is readily met in securities cases. *See also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) ("The commonality requirement has been applied permissively in the context of securities fraud litigation."). Further, Lead Plaintiffs' claims are "typical" of other Class Members' claims because they purchased RenaissanceRe common stock during the period of asserted price inflation and thus have alleged damages similar to other Class Members. Joint Decl., ¶45. *See In re Host Am. Corp. Sec. Litig.*, No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418, at *14-*15 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged defendants committed same acts, in same manner against all class members).

### B.    Adequacy of Representation

The adequacy requirement of Rule 23(a)(4) requires Lead Plaintiffs to demonstrate that: (1) there is no conflict of interest between Lead Plaintiffs and the other Class Members; and (2) Lead Plaintiffs' counsel are qualified, experienced and capable of conducting the Action. *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *20-*21. Here, this Court has already designated the proposed class representatives as Lead Plaintiffs pursuant to the PSLRA, which provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Furthermore, Lead Plaintiffs have retained highly competent counsel with extensive experience litigating complex securities class actions. *See* biographies of SBTK and Coughlin Stoia attached to the Joint Declaration as Exhibits 3 and 4. Thus, Lead Plaintiffs and their counsel have diligently advanced the interests of the Class. Joint Decl., ¶46.

### C.    Predominance of Common Issues and Superiority

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). In this Action, both of these requirements are satisfied. First, in order to satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. *Id.* at 136. As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. Here, the issues of liability and causation are common to all members of the Class and clearly predominate over any individual issues. Second, resolution of this Action through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in RenaissanceRe common stock. *In re Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 218 (S.D.N.Y. 2006) ("[i]t is beyond dispute . . . that in determining whether defendants made false representations or omitted material facts, with scienter, and in connection with the purchase or sale of securities . . . common issues will predominate over individual ones").

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes.

## VI.    CONCLUSION

The Settlement reached in this Action is an excellent result under the circumstances present here. For the foregoing reasons, the $13.5 million all-cash settlement and Plan of Allocation of the Settlement proceeds are fair, reasonable and adequate and should be granted the Court's final approval. Additionally, all the requirements for certification have been met, and Lead Plaintiffs' counsel respectfully submit that the Court should certify the Class for settlement purposes.

DATED:  January 4, 2008                   Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
DAVID A. ROSENFELD (DR-7564)
MARIO ALBA, JR. (MA-7240)


                         s/ Samuel H. Rudman
——————————————————————————————
                    SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

SCHIFFRIN BARROWAY TOPAZ
  & KESSLER, LLP
DAVID KESSLER
KAY E. SICKLES
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)

Co-Lead Counsel for Plaintiffs

S:\Settlement\RenaissanceRe.set\BRF SETTLEMENT 00048139.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing documents *via* the United States Postal Service to the non-CM/ECF participants.

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP


s/ Samuel H. Rudman
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail:  SRUDMAN@csgrr.com

# Mailing Information for a Case 1:05-cv-06764-WHP

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@csgrr.com,e_file_ny@csgrr.com,drosenfeld@csgrr.com

- **John J. Clarke , Jr**
  john.clarke@dlapiper.com

- **George T Conway , III**
  GTConway@wlrk.com

- **Ken Laves Hashimoto**
  ken_hashimoto@aporter.com

- **Christopher J. Keller**
  ckeller@labaton.com,ElectronicCaseFiling@labaton.com

- **Ashley H. Kim**
  ashley@spornlaw.com

- **James D. Mathias**
  james.mathias@dlapiper.com

- **Steven Robert Paradise**
  sparadise@velaw.com

- **Jonathan M. Plasse**
  jplasse@labaton.com,electroniccasefiling@labaton.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Kay E Sickles**
  ksickles@sbtklaw.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com

- **Shelley Thompson**
  sthompson@labaton.com,electroniccasefiling@labaton.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Anne P. Davis
Arnold & Porter LLP

555 Twelfth Street, NW
Washington, DC 20004-1206

**Lummis, Merritt, Riker and Stanard**
,

**Scott B. Schreiber**
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, DC 20004-1206

**Robert Alexander Schwartz**
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206