UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ x | | |
| In re RENAISSANCERE HOLDINGS LTD. | : | Master File No. 1:05-cv-06764-WHP |
| SECURITIES LITIGATION | : | |
| _____ | : | **<u>ELECTRONICALLY FILED</u>** |
| | : | |
| This Document Relates To: | : | <u>CLASS ACTION</u> |
| | : | |
| ALL ACTIONS. | : | LEAD PLAINTIFFS' MEMORANDUM OF |
| _____ x | | LAW IN SUPPORT OF MOTION FOR AN |
| | | AWARD OF ATTORNEYS' FEES AND |
| | | EXPENSES |

# TABLE OF CONTENTS

**Page**

**Table of Contents**

I.     INTRODUCTION ........................................................................................................1

II.    PRELIMINARY STATEMENT .................................................................................1

III.   HISTORY OF THE LITIGATION .............................................................................3

IV.    ARGUMENT ...............................................................................................................5

      A.   Lead Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees and Reimbursement of Expenses from the Common Fund ..............................................5

      B.   The Court Should Award a Reasonable Percentage of the Common Fund ............6

      C.   The Relevant Factors Confirm that the Requested Fee Is Reasonable ...................9

            1.   The Time and Labor Expended by Counsel .................................................9

            2.   The Risks of the Litigation ........................................................................11

                    a.   The Contingent Nature of Lead Plaintiffs' Counsel's Representation Supports the Requested Fee ................................11

                    b.   Litigation Risks ...............................................................................14

                    c.   Risk as to Damages..........................................................................14

             3.   The Magnitude and Complexity of the Litigation .....................................15

            4.   The Quality of Representation ...................................................................17

            5.   Public Policy Considerations .....................................................................17

      D.   The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method .....................................19

      E.   The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check....................................................................................................20

      F.   The Class's Reaction to the Fee Request ...............................................................23

V.     Lead Plaintiffs' Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of This Action ............................................................................24

**Page**

VI.    CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ..................................................................12

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..................................................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)..............................................................................6, 17

*Blum v. Stenson*,
    465 U.S. 886 (1984)..................................................................................19

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)....................................................................................5

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ...................................................................6

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ...................................................................6

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992)......................................................15, 18

*Cosgrove v. Sullivan*,
    759 F. Supp. 166 (S.D.N.Y. 1991).............................................................22

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................................11

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)..................................................................................14

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)..........................................................7, 20

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................ *passim*

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) .....................................................................6

**Page**

*In re Acclaim Entm't, Inc. Sec. Litig.*,
   No. 03-CV-1270 (JS) (ETB) (E.D.N.Y. Oct. 2, 2007) ...................................................20

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................7, 8, 12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   No. 1500, 2006 U.S. Dist. LEXIS 17588
   (S.D.N.Y. Apr. 6, 2006)......................................................................................15

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)..............................................................................10

*In re Brown Co. Sec. Litig.*,
   355 F. Supp. 574 (S.D.N.Y. 1973)........................................................................17

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..............................................................................12

*In re Doral Fin. Corp. Sec. Litig.*,
   No. 1:05-md-01706-RO (S.D.N.Y. July 17, 2007).....................................................7, 22

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................7, 8, 24

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)....................................................................................6

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. 1992) ...........................................................................8

*In re Harrah's Entm't*,
   No. 95-3925, 1998 U.S. Dist. LEXIS 18774
   (E.D. La. Nov. 25, 1998) ....................................................................................23

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)........................................................................15, 23

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)....................................................................24

*In re Interpublic Sec. Litig.*,
   Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429
   (S.D.N.Y. Oct. 27, 2004) .....................................................................................6

**Page**

*In re Ivan F. Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995)...................................................................................21

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV 89-0090 E(M), 1990 U.S. Dist. LEXIS 15488
    (S.D. Cal. Aug. 30, 1990) ...........................................................................................10

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
    (S.D.N.Y. Feb. 1, 2007) ...............................................................................................21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................22

*In re Prudential Sec. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997)...............................................................................12

*In re Reliance Group Holdings, Inc. Sec. Litig.*,
    No. 00 Civ. 04653 (TPG) (S.D.N.Y. Mar. 27, 2006) ..................................................20

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)..........................................................................................24

*In re RJR Nabisco Sec. Litig.*,
    No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702
    (S.D.N.Y. Aug. 24, 1992) .............................................................................................22

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)..............................................................................8

*In re Superior Beverage/Glass Container Consol. Pretrial*,
    133 F.R.D. 119 (N.D. Ill. 1990)...................................................................................23

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989)...............................................................................18

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
    No. 1:03-CV-8284 (RWS) (S.D.N.Y. Dec. 6, 2006) ...................................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554
    (S.D.N.Y. Nov. 7, 2007) ...................................................................................5, 6, 7, 20

**Page**

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd*, 798 F.2d 35 (2d Cir. 1986) ......................................................................18, 21

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...............................................................8, 19

*In re Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................11, 23

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ...............................................................................................6

*Johnston v. Comerica Mortgage Corp.*,
  83 F.3d 241 (8th Cir. 1996) ....................................................................................6

*Liberty Capital Group, Inc. v. KongZhong Corp.*,
  No. 1:04-CV-06746-SAS
  (S.D.N.Y. Apr. 14, 2006) ......................................................................................20

*Lindy Bros. Builders, Inc. v. Am. Radiator &*
*Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973) ..................................................................................21

*Lindy Bros. Builders v. Am. Radiator &*
*Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976) ..................................................................................21

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................... *passim*

*Mathes v. Roberts*,
  85 F.R.D. 710 (S.D.N.Y. 1980) ............................................................................15

*McKenzie Constr., Inc. v. Maynard*,
  758 F.2d 97 (3d Cir. 1985) ....................................................................................10

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ..........................................................................................19, 21

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
  711 F.2d 1136 (2d Cir. 1983) ................................................................................21

**Page**

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ........................................................................6

*Rawlings v. Prudential-Bache Props.*,
    9 F.3d 513 (6th Cir. 1993) ...........................................................................6

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992) ...........................................................17, 18

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) ...................................................................12

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) ...............................................................22

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999) .....................................................................5, 6

*Silverberg v. People's Bank*,
    23 Fed. Appx. 46 (2d Cir. 2001) .................................................................19

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................................6

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...........................................................8

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) .......................................................................6

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608
    (S.D.N.Y. May 14, 2004) ............................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    ___ U.S. ___, 127 S. Ct. 2499 (2007) .....................................................6, 17

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976) ...................................................................................14

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................................7, 8

**Page**

*Weiss v. Mercedes-Benz of N. Am.*,
      899 F. Supp. 1297 (D.N.J. 1995) ..................................................................22

*Zerkle v. Cleveland-Cliffs Iron Co*.,
      52 F.R.D. 151 (S.D.N.Y. 1971) ....................................................................15


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
      §78j(b)......................................................................................................... 3
      §78t(a) ...........................................................................................................3
      §78t-1 ............................................................................................................3
      §78u-4(a)(6) ..................................................................................................7

Federal Rule of Civil Procedure
      Rule 1 ..........................................................................................................11

17 Code of Federal Regulations
      Rule 10b-5......................................................................................................3


**SECONDARY AUTHORITIES**

1 Alba Conte,
*Attorney Fee Awards* (2d ed. 1993)
      §2.06.............................................................................................................22

Charles Alan Wright, Arthur R. Miller, Mary Kay Kane,
*Federal Practice and Procedure* (3d ed. 2005)
      §1803..............................................................................................................5

Third Circuit Task Force, *Court Awarded Attorney Fees*
      108 F.R.D. 237 (Oct. 8, 1985) .......................................................................7

## I.    INTRODUCTION

Lead Plaintiffs' counsel have succeeded in obtaining a cash settlement fund of $13.5 million for the benefit of the Class.  This is an excellent result in light of the risks faced and overcome, and is a credit to Lead Plaintiffs' counsel's vigorous and creative efforts despite the mandatory discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  These counsel now respectfully move this Court for an award of attorneys' fees in the amount of 25% of the Settlement Fund.[1]  In addition, Lead Plaintiffs' counsel request $150,953.31 in expenses that were reasonably and necessarily incurred by them in prosecuting this consolidated class action (the "Litigation") and obtaining this substantial settlement for the benefit of the Class.[2]

## II.    PRELIMINARY STATEMENT[3]

Lead Plaintiffs' counsel have obtained an all-cash settlement for $13,500,000 on behalf of the Class.  This is an excellent result when considering the risk that the case would be dismissed upon Defendants' motions, or later after years of litigation, upon summary judgment or at trial.  As explained below and in the Joint Declaration, Lead Plaintiffs' counsel expended significant time and expenses and overcame significant potential obstacles to reach this substantial resolution for the Class.  Specifically, in addition to issues regarding falsity and materiality of Defendants' statements,

---

[1]     Lead Plaintiffs approved Lead Plaintiffs' counsel's request to seek such a fee award.

[2]     In support of this application for attorneys' fees and expenses, Lead Plaintiffs also submit herewith the Joint Declaration of Kay E. Sickles and Samuel H. Rudman in Support of Lead Plaintiffs' Motion for Final Approval of Settlement, Plan of Allocation and the Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Decl.").

[3]     The Joint Declaration is an integral part of this submission.  The Court is respectfully referred to it for a detailed description of the factual and procedural history of the Litigation, the claims asserted, Lead Plaintiffs' and Lead Plaintiffs' counsel's investigation and litigation efforts, and the negotiations leading to this Settlement.

Lead Plaintiffs faced certain loss causation hurdles, because, among other things, when RenaissanceRe Holdings Ltd. ("RenaissanceRe" or the "Company") announced the restatement of its financial results due to the Inter-Ocean Holdings, Ltd. ("Inter-Ocean") transactions on February 22, 2005, the Company's stock price did not decline.  Moreover, Defendants challenged Lead Plaintiffs' assertions that other public statements at the end of the Class Period were "curative," further limiting potential damages. Defendants also forcefully argued that Lead Plaintiffs' proposed Class Period was improperly long.  If any or all of Defendants' positions prevailed, damages would have been significantly less than Lead Plaintiffs' expert had calculated, and the recovery for the Class would have been significantly less than that obtained here.  Thus, Lead Plaintiffs' counsel's efforts have resulted in an excellent recovery for the Class.

For their efforts and the risks and contingencies they faced, Lead Plaintiffs' counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Fund, plus expenses in the amount of $150,953.31, plus interest on both amounts.  Following an extensive Court-ordered notice program, not a single Class Member has objected to this fee and expense request, and Lead Plaintiffs' counsel respectfully submit that these amounts are fair and reasonable under the circumstances.[4]

---

[4]    As of the filing of this Fee Memorandum, which is after the deadline for filing objections, Lead Plaintiffs' counsel have not received any objections to the fee request.  Pursuant to the Court's September 12, 2007 Order for Notice and Hearing (the "Preliminary Approval Order"), more than 52,000 copies of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Reimbursement of Expenses and Settlement Hearing (the "Notice") were mailed to potential Class Members, advising that Lead Plaintiffs' counsel intended to apply to the Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund, and that Lead Plaintiffs' counsel would seek expenses of no greater than $275,000.

## III.    HISTORY OF THE LITIGATION

From the outset of this Litigation and despite the mandatory discovery stay imposed by the PSLRA, Lead Plaintiffs' counsel undertook an extensive investigation and analysis, including reviewing RenaissanceRe's public filings, financial statements and other public statements, as well as analyst reports on the Company.  Lead Plaintiffs' counsel also educated themselves on the reinsurance industry, including such complex areas as finite agreements and future risk insurance, and the transactions between RenaissanceRe and Inter-Ocean.  Lead Plaintiffs' counsel also identified, contacted and interviewed confidential witnesses and former RenaissanceRe employees, and consulted with accountants, forensic investigators and a damage expert.

Following their investigation, Lead Plaintiffs' counsel filed a detailed amended complaint setting forth the fruits of this investigation and analysis.  The Complaint alleged violations of §§10(b), 20(a) and 20A of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), against the Defendants.  Joint Decl. ¶15.  The Complaint detailed RenaissanceRe's restatement of earnings for 2001-2003 and the first three quarters of 2004, announced on February 22, 2005, and the Defendants' allegedly false and misleading statements concerning RenaissanceRe's stable and consistent earnings generation, despite its involvement in the reinsurance industry, which is considered a volatile and risky segment of the insurance business.  *Id.*  Lead Plaintiffs alleged that Defendants engaged in intentional earnings manipulation through the use of future risk insurance (specifically, transactions with Inter-Ocean that had no economic substance) to "smooth" and defer approximately $26.2 million in earnings from 2001 to 2002 and 2003.  The Complaint further alleged that as a result of Defendants' financial fraud, not only was RenaissanceRe forced to restate over three years of its financial results, but the price of RenaissanceRe common stock was artificially inflated during the course of the Class Period, causing injury and damages to Lead Plaintiffs and the Class.

Defendants moved to dismiss the Complaint, arguing that Lead Plaintiffs had not alleged material misstatements or omissions and had failed to adequately allege loss causation. Lead Plaintiffs opposed the motions, and Defendants filed reply memoranda. While Defendants' motions were pending before the Court, the SEC filed a complaint against several of the individual Defendants. Lead Plaintiffs sought and obtained leave from the Court to file an amended complaint to incorporate some aspects of the SEC's complaint. Lead Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") was filed on December 4, 2006. Joint Decl. ¶¶16-18.

Following the filing of the SAC, the parties began informal discussions for a possible resolution of the Litigation. They agreed to proceed through formal mediation with the assistance of an experienced mediator, the Honorable Layn R. Phillips (Ret.), a retired federal district judge. In advance of the mediation, the parties prepared detailed mediation statements for Judge Phillips. At the mediation, which took place on February 14, 2007, the parties presented their respective views on the merits of their positions, the level of potential damages suffered by the Class, and the practicalities of continued litigation. Following a full day of negotiations, the parties reached an agreement to settle the Litigation for $13.5 million in cash. That day, the parties executed a Memorandum of Understanding setting forth their agreement-in-principle. Joint Decl. ¶24.

Additionally, one of the important terms of the Settlement was RenaissanceRe's agreement to produce to Lead Plaintiffs' counsel documents produced by it to the SEC, which would allow the Lead Plaintiffs to better evaluate the strengths and weaknesses of their claims and Defendants' defenses, and thereby confirm the adequacy of the Settlement and the veracity of Defendants' representations during settlement negotiations. Joint Decl. ¶21. Lead Plaintiffs' counsel reviewed over 98,000 pages of documents, and, following this review, concluded that the documents generally supported Lead Plaintiffs' allegations regarding RenaissanceRe's use of future risk insurance to

"smooth" and defer earnings from one year to the next.  Joint Decl. ¶22.  However, the documents also provided support for certain of Defendants' asserted and anticipated defenses, including scienter as to each and every one of the individual Defendants.  *Id.*  There was, therefore, real risk in further litigation.

## IV.    ARGUMENT

### A.    Lead Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees and Reimbursement of Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts."  7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See also Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *7- *8 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d

- 5 -

358, 369 (S.D.N.Y. 2002).   Indeed, the Supreme Court has emphasized that private securities

actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the

securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards,*

*Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964));

*accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S. Ct. 2499 (2007).

Courts in this Circuit, and in this District have consistently adhered to these teachings.  *See In*

*re Interpublic Sec. Litig.*, Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-*31 (S.D.N.Y.

Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which

members of a class are compensated for a common injury, the attorneys who created the fund are

entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted).  The

"[d]etermination of 'reasonableness' is within the discretion of the district court."  *Id.* at *31.

   **B.**     **The Court Should Award a Reasonable Percentage of the Common**
            **Fund**

The Second Circuit has authorized district courts to employ the percentage-of-the-fund

method when awarding fees in common fund cases.  *See Goldberger*, 209 F.3d at 47 (holding that

percentage-of-fund method may be used to determine appropriate attorneys' fees, although lodestar

method may also be used); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *10.  In expressly approving the

percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had

resulted in "an inevitable waste of judicial resources."  *Goldberger*, 209 F.3d. at 48, 49;[5] *Savoie*, 166

---

[5]      The use of the percentage-of-the-fund method in common fund cases has been approved by
every other Court of Appeals that has addressed the issue.  *See In re Thirteen Appeals Arising out of
the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up
Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-
Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975
(7th Cir. 1991); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six
Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson,*

- 6 -

F.3d at 460 (stating that "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254-59 (Oct. 8, 1985) (recognizing the many shortfalls of lodestar method and unequivocally recommending that courts use percentage method in common fund cases).[6] *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method.").

The trend among district courts in this Circuit, although not uniform, is to award fees using the percentage-of-the-fund method, rather than the lodestar approach. *See, e.g.*, *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *11; *In re Gilat Satellite Networks, Ltd.*, CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964, at *39-*40 (E.D.N.Y. Sept. 18, 2007); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO (S.D.N.Y. July 17, 2007);[7] *Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method."); *Frank v. Eastman Kodak Co.*, 228 F.R.D.

---

*Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). Indeed, the Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

[6]   The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6) (emphasis added). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 U.S. Dist. LEXIS 85554, at *11; *Maley*, 186 F. Supp. 2d at 370; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).

[7]   All unreported orders referred to herein are attached as Exhibit 5 to the Joint Declaration submitted herewith.

174, 188 (W.D.N.Y. 2005); *Global Crossing*, 225 F.R.D. at 446; *In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, at *75 (S.D.N.Y. Nov. 12, 2004); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (trend in this Circuit is to award attorneys' fees using percentage method), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (same); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *73 (S.D.N.Y. Nov. 26, 2002) (observing that courts in Southern District of New York have found percentage method appropriate in common fund cases); *Maley*, 186 F. Supp. 2d at 370 (noting that trend in this Circuit is to use percentage method); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (stating that "[c]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation"); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (holding that "the lodestar formula is undesirable if an alternative is available").

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award Lead Plaintiffs' counsel attorneys' fees based on a percentage of the fund. The percentage approach not only aligns the interests of counsel and the class, *Lloyd's Am. Trust Fund*, 2002 U.S. Dist. LEXIS 22663, at *74, it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees." *Am. Bank Note*, 127 F. Supp. 2d at 432.

**C.      The Relevant Factors Confirm that the Requested Fee Is Reasonable**

The Second Circuit in *Goldberger* explained that whether the Court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

209 F.3d at 50.  An analysis of these factors demonstrates that the requested fee is reasonable.

**1.      The Time and Labor Expended by Counsel**

Lead Plaintiffs' counsel have expended substantial time and effort pursuing this Litigation on behalf of the Class.  Since its inception, Lead Plaintiffs' counsel and their para-professionals and in-house investigators, forensic accountants and economic analysts devoted more than 2,058 hours to this Litigation.  As discussed more fully above and in the Joint Declaration, Lead Plaintiffs' counsel conducted an extensive investigation of the issues involved in this case, which included utilization of forensic accountants and investigators to build support for Lead Plaintiffs' allegations, and consultation with economic analysts.  Lead Plaintiffs' counsel undertook this investigation while the PSLRA-mandated discovery stay was in effect.  Lead Plaintiffs' counsel also engaged in arm's-length negotiations with Defendants with the assistance of a mediator, and completed the analysis of over 98,000 pages of documents.  Lead Plaintiffs' counsel also worked closely with the SEC on the proposed plan of allocation of settlement proceeds and the mechanics and practicalities of making

- 9 -

one distribution to Class Members.[8]  Moreover, Lead Plaintiffs' counsel, with the assistance of their

damage consultant, calculated the estimated damages suffered by the Class and prepared the

proposed Plan of Allocation.  The legal work on this Litigation will not end with the Court's

approval of the proposed settlement.  Additional hours and resources will necessarily be expended

assisting Class Members with their Proof of Claim forms, shepherding the claims process, and

responding to Class Members' inquiries.  The tremendous time and effort devoted to this case by

Lead Plaintiffs' counsel to obtain a $13.5 million settlement confirm that the fee request is

reasonable.

 In addition, in reviewing applications for attorneys' fees in common fund cases, courts do not

penalize counsel for obtaining settlements for class members at a relatively early juncture in the

case.  As stated by the court in *Maley*:

> [E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality
> of Plaintiffs' Class Counsel's representation here, especially given the dire financial
> straits of [defendant].  "[A] prompt and efficient attorney who achieves a fair
> settlement without litigation serves both his client and the interests of justice."  In the
> context of a complex class action, early settlement has far reaching benefits in the
> judicial system.

186 F. Supp. 2d at 373 (quoting *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97,101-02 (3d Cir.

1985)).  *Accord In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 133 (D.N.J. 2002) ("Informal

discovery leading to an early settlement that avoids such costs [of formal discovery] favors approval

of the fee application."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E(M), 1990 U.S. Dist.

LEXIS 15488, at *21 (S.D. Cal. Aug. 30, 1990) ("Early settlements benefit everyone involved in the

---

[8] Class Members will share in a $15,000,001 SEC Fair Fund created in the civil enforcement
action brought by the SEC against certain of the defendants in this Litigation.  If approved by the
court in which that action is pending, the SEC Fair Fund will be distributed simultaneously with the
Net Settlement Fund created in this Litigation, *pro rata*, to Class Members who submit valid, timely
Proof of Claim forms.

process and everything that can be done to encourage such settlements – especially in complex class action cases – should be done.").

As stated by Judge David S. Doty of the United States District Court for the District of Minnesota in *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005), early settlements are consistent with the purposes of the Federal Rules of Civil Procedure, which "'shall be construed and administered to ensure the ***just, speedy, and inexpensive determination*** of every action.'" (quoting Fed. R. Civ. P. 1) (emphasis in original).  "Under Rule 1, as officers of the court, attorneys share the responsibility with the court of ensuring that cases are 'resolved not only fairly, but without undue cost or delay.'" *Xcel*, 364 F. Supp. 2d at 992 (quoting Fed. R. Civ. P. 1 advisory committee's notes on 1993 amendments).  In awarding a 25% fee, the *Xcel* court complimented counsel for promptly resolving the litigation, and acknowledged that the modest lodestar presented to the court was a result of the efficient prosecution of the case.  Here, Lead Plaintiffs' counsel in this case have likewise litigated efficiently, and, for their efforts, seek a 25% fee.

   2.  **The Risks of the Litigation**

     a.  **The Contingent Nature of Lead Plaintiffs' Counsel's Representation Supports the Requested Fee**

The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS

8608, at *11 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Lead Plaintiffs' counsel in prosecuting this class action. Lead Plaintiffs' counsel undertook this action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this action without a guarantee of compensation or even the recovery of out-of-pocket expenses. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Plaintiffs' counsel have not been compensated for any time or expenses since this case began, and would have received no compensation or even reimbursement of expenses had this case not been successful.[9]

This Litigation was undertaken by Lead Plaintiffs' counsel on a wholly-contingent basis. From the outset, Lead Plaintiffs' counsel understood that they were embarking on a complex,

---

[9]     The risk of no recovery in complex cases of this type is real, and is heightened when lead counsel press to achieve the very best result for those they represent. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise. *See, e.g.*, *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

- 12 -

expensive and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead Plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Litigation and that funds were available to compensate staff and to pay for the considerable out-of-pocket costs which a case such as this entails. Joint Decl. ¶57. Because of the nature of a contingent practice where cases are predominantly "big cases" lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. *Id.*

In addition to advancing litigation expenses and paying overhead, Lead Plaintiffs' counsel faced the possibility that they would receive no attorneys' fees. It is wrong to presume that a law firm handling complex contingent litigation always wins. Tens of thousands of hours have been expended in losing efforts. The factor labeled by the courts as "the risks of litigation" is not an empty phrase. There are numerous cases where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation. It is only because Defendants and their counsel know that the leading members of the plaintiffs' securities bar are prepared to, and will, force a resolution on the merits and go to trial, or pursue appeals if necessary, that meaningful settlements in actions such as this can occur. Joint Decl. ¶58.

Losses in contingent fee litigations, especially those brought under the PSLRA, are exceedingly expensive. As a result, the fees that are awarded in successful litigations are used to cover enormous overhead expenses incurred during the course of the litigation and are taxed by federal, state and local authorities. Joint Decl. ¶59.

### b.      Litigation Risks

While Lead Plaintiffs remain confident of their ability to prove their claims and to effectively rebut Defendants' defenses, they recognize that proving liability was far from certain.  To succeed on their claims under the Securities Exchange Act of 1934, Lead Plaintiffs must establish, *inter alia*, that each Defendant was responsible for an omission or a misstatement that was material and that caused damage to the Class and that Defendants acted with **scienter**.  *See TSC Indus. v. Northway, Inc.*, 426 U.S. 438 (1976); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

As set forth in the  Joint Declaration, Defendants countered the existence of any material misstatements or omissions, scienter or loss causation and convincingly presented their defenses in their motions to dismiss and during mediation.  Joint Decl. ¶¶31-35.  For instance, Defendants steadfastly maintained that Lead Plaintiffs failed to plead and would ultimately be unable to prove that the restatement was material, because the deferral of approximately $26.2 million in earnings from 2001 to 2002 and 2003 hardly had the effect of "smoothing" RenaissanceRe's net income, which in the aggregate exceeded $1.16 billion during the period of 2001 through 2003.  Thus, they argued it had absolutely no effect on the Company's balance sheet.  Joint Decl.  ¶34.  Defendants' motions to dismiss on these grounds might well have been granted by the Court based on any or all of the defenses put forth by Defendants.  Regardless of the outcome of the motions however, it is clear that Defendants would never concede their liability and that Defendants would press these defenses in motions for reconsideration and summary judgment, and ultimately, at trial.

### c.      Risk as to Damages

Whether Lead Plaintiffs could even prove their estimate of damage was certainly unsettled.  Joint Decl. ¶¶32-33.  Defendants strenuously disagreed with Lead Plaintiffs' damage estimates, claiming that the Class Period was improperly long and that Lead Plaintiffs could not establish loss causation because when RenaissanceRe announced the restatement of its financial results on

February 22, 2005 due to the Inter-Ocean transactions, the price of RenaissanceRe stock did not decline. Joint Decl. ¶32. Moreover, Defendants maintained that the Company's announcement of Cash's resignation on July 11, 2005, and the issuance of a Wells Notice to defendant Standard on July 25, 2005, precipitating stock price drops of 1.5% and 9%, respectively, resulted from new developments in the course of the SEC investigation, and were not a result of any corrected misstatements by the Company. *Id.* In order for the Class to recover damages at the level estimated by Lead Plaintiffs' expert, Lead Plaintiffs would have to prevail on each and every one of the claims alleged, for the length of the Class Period alleged by Lead Plaintiffs. In addition, the damage assessments of the Parties' trial experts would be sure to vary substantially, and trial would become a "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for the Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. Joint Decl. ¶33. Thus, even if Lead Plaintiffs prevailed as to liability at trial, the judgment obtained could well have been but for a fraction of the damages claimed.

### 3.     The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). It is widely recognized that shareholder actions are notoriously complex and difficult to prove. *See Mathes v. Roberts*, 85 F.R.D. 710, 713-14 (S.D.N.Y. 1980); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). *See also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 1500, 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable

challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This Litigation is no different from the cases referenced above. As described in much greater detail in the accompanying memorandum in support of the Settlement and the Joint Declaration, this Litigation involved difficult and complex issues concerning the reinsurance industry, revenue recognition and finite risk agreements and the impact of such agreements on the Company's financial statements. Lead Plaintiffs' counsel undertook their investigation without any assistance from any federal investigations and on a contingent basis. Full discovery, including document discovery, depositions and expert discovery, would take a great deal of time, and would have cost hundreds of thousands of dollars. Joint Decl. ¶¶36, 56.

In addition, as set forth in the Joint Declaration, the expense and length of the Litigation would have been further exacerbated because Defendants would have undoubtedly filed motions for summary judgment on any claims remaining following resolution of Defendants' motions to dismiss, which would have been refiled and rebriefed had the Settlement not been reached. Lead Plaintiffs' responses to those motions would have entailed further substantial expenditure of time and effort. Assuming those claims survived summary judgment, trial preparation would have required many additional hours of work, at great expense. The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. The "normal" cost of litigation, including copying, travel, depositions, computer support services, and other necessary expenses, are quite high, especially here, where most of the relevant documents and witnesses are located in Bermuda. In a complex class action such as this one, where many of the relevant documents and witnesses are located outside of this country, those expenses would have

imposed a significant burden on any recovery obtained for the Class if Lead Plaintiffs were ultimately successful, which would be by no means assured.  Joint Decl. ¶37.  This Litigation was vigorously contested, and Defendants were represented by attorneys from nationally known and highly respected law firms.  *See In re Brown Co. Sec. Litig*., 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel).  Accordingly, the magnitude and complexity of this securities class action supports the conclusion that the requested fee is reasonable and fair.

### 4.    The Quality of Representation

The quality of the representation by Lead Plaintiffs' counsel and the standing of that counsel at the bar are important factors that support the reasonableness of the requested fee.  *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).  It took a great deal of skill to achieve this Settlement.  Lead Plaintiffs' counsel are nationally known leaders in the fields of securities class actions and complex litigation.  This Settlement represents a highly favorable result for the Class, one that is attributable to the diligence, determination, hard work and reputation of Lead Plaintiffs' counsel, who developed, litigated and successfully negotiated the settlement of this Litigation, an immediate cash recovery, without the risk of further litigation.  Joint Decl. ¶60.  In light of these facts, Lead Plaintiffs' counsel's request for 25% of the common fund is fair and reasonable.

### 5.    Public Policy Considerations

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman*, 472 U.S. at 310 (citation omitted); *Tellabs*, 127 S. Ct. at 2504 (noting that the Court has long recognized that meritorious private actions to enforce

federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).  Plaintiffs' counsel in these types of cases are typically retained on a contingent basis, largely due to the huge commitment of time and expense required.  The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves.  Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases.  Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'"  *Ressler*, 149 F.R.D. at 657.  Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions."  *Id.*[10]

---

[10]    *See also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *In re Med. X-Ray Film Antitrust Litig.*, CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *23 (E.D.N.Y. Aug. 7, 1998) (awarding fee of 33-1/3% because it "furthers the public policy of encouraging private lawsuits"); *Chatelain*, 805 F. Supp. at 216 (determining that "an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  As former Chief Judge Brieant observed in *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160 (S.D.N.Y. 1989):

> Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance.  A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.

*Id.*  at 169.

As actionable securities fraud exists and society benefits from strong advocacy on behalf of

securities holders, public policy favors the granting of the fee and expense application.  *See In re*

*WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-

qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are

able to and willing to do so, it is necessary to provide appropriate financial incentives."); *Taft v.*

*Ackermans*, 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *33 (S.D.N.Y. Jan. 31, 2007)

("'the class action mechanism and its associated percentage-of-recovery fee award solve the

collective action problem encountered by which it would not be worthwhile for individual investors

to take the time and effort to initiate the action'") (citation omitted).

> **D.    The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method**

Regardless of which method a court uses to award attorneys' fees, the award must be

reasonable under the circumstances of the particular case.  *Goldberger*, 209 F.3d at 47.  The fee

requested in this case – 25% of the Settlement Fund – is well within the range of fees awarded by

courts in this Circuit, whether considered as a percentage of the fund or as a multiple of lodestar.  In

selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is

intended to approximate what counsel would receive if they were bargaining for the services in the

marketplace.  *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  If this were a non-representative

action, the customary fee arrangement would be contingent, on a percentage basis, and in the range

of 30% to 40% of the recovery.  *Blum v. Stenson*, 465 U.S. 886, 903* (1984) ("In tort suits, an

attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore,

the fee is directly proportional to the recovery.").

On a percentage basis, the compensation requested here is well within the range of

percentage fee awards within the Second Circuit.  *Silverberg v. People's Bank*, 23 Fed. Appx. 46,

47-49 (2d Cir. 2001) (affirming district court order awarding attorneys' fees and expenses of nearly one-third of settlement fund).  Indeed, the requested fee is equal to or below what courts in this Circuit commonly award in common fund cases.  *See Veeco*, 2007 U.S. Dist. LEXIS 85554, at \*39 (awarding 30% of $5.5 million fund); *Gilat*, 2007 U.S. Dist. LEXIS 68964, at \*59 (awarding 25% of $20 million fund); *In re Reliance Group Holdings, Inc. Sec. Litig.*, No. 00 Civ. 04653 (TPG), slip op. at 11 (S.D.N.Y. Mar. 27, 2006) (awarding 28% of $15 million fund); *In re Acclaim Entm't, Inc. Sec. Litig.*, No. 03-CV-1270 (JS) (ETB), slip op. at 9 (E.D.N.Y. Oct. 2, 2007) (awarding 30% of $13.65 million fund); *Taft*, 2007 U.S. Dist. LEXIS 9144, at \*35 (awarding 30% of $15.175 million fund); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33-1/3% of $8 million fund); *Hicks*, 2005 U.S. Dist. LEXIS 24890, at \*24, \*25 (awarding 30% of $10 million settlement fund, stating a "30% fee is consistent with fees awarded in comparable class action settlements in the Second Circuit" and does not produce a "windfall"); *Liberty Capital Group, Inc. v. KongZhong Corp.*, No. 1:04-CV-06746-SAS, slip op. at 2 (S.D.N.Y. Apr. 14, 2006) (awarding 30% of $3.5 million settlement fund); *Spann v. AOL Time Warner, Inc.*, 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at \*24 (S.D.N.Y. June 7, 2005) (awarding 33-1/3% of settlement fund); *Eastman Kodak*, 228 F.R.D. at 189 (awarding 40% of settlement fund, and noting that due to the relatively small settlement fund, the requested fee award was necessary to compensate counsel adequately); *In re Warnaco Group, Inc. Sec. Litig.*, 00 Civ. 6266 (LMM), 2004 U.S. Dist. LEXIS 13126, at \*3 (S.D.N.Y. July 13, 2004) (awarding 30% of $12.85 million settlement); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund).

### E.  The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages the district courts to cross check the proposed award against counsel's

lodestar. *Goldberger*, 209 F.3d at 50. Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work. *See, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*). "Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner Commc'ns*, 618 F. Supp. at 747; *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). Performing the lodestar cross-check here confirms that the fee requested by Lead Plaintiffs' counsel is reasonable and should be approved.

Lead Plaintiffs' counsel and their para-professionals have spent, in the aggregate, 2,058.92 hours in the prosecution of this case. *See* Declarations of counsel attached as Exhibits 3 and 4 to the Joint Declaration submitted herewith. The resulting lodestar is $892,086.00, and requires a multiplier of only 3.78 to equate with the requested 25% of the Settlement Fund. Joint Decl. ¶55.[11]

In determining whether the rates are reasonable, the Court should take into account the attorneys' legal reputation, experience and status. As the accompanying declarations of Lead Plaintiffs' counsel state, counsel are among the most prominent, experienced and well-regarded securities practitioners in the nation. Therefore, their hourly rates are reasonable here. *See In re*

---

[11]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84; *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (use of current rates appropriate where services were provided within two or three years of application).

*Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *73 (S.D.N.Y. Feb. 1, 2007) (approving counsel's hourly rates).

The multiplier reflected here falls within the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and elsewhere and is fully justified here given the effort required, the risks faced and overcome and the results achieved.  *See, e.g.*, *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, slip op. at 5 (S.D.N.Y. July 17, 2007) (awarding multiplier of 10.26, on $130 million settlement fund); *Maley*, 186 F. Supp. 2d at 371 ("it clearly appears that the modest multiplier of 4.65 is fair and reasonable"); *In re Bisys Sec. Litig.*, 04 Civ 3840 (JSR), 2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 16, 2007) (awarding multiplier of 2.99 times lodestar);  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving multiplier of 3.97 and noting that "'[i]n recent years multipliers of between 3 and 4.5 have become common'") (citation omitted); *Kurzweil v. Philip Morris Cos.*, 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378, at *8 (S.D.N.Y. Nov. 30, 1999) (same); *In re RJR Nabisco Sec. Litig.*, No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *22 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such an award of fees represented a multiplier of 6); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee resulting in 9.3 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74); *Rabin v. Concord Assets Group*, 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273, at *4 (S.D.N.Y. Dec. 19, 1991) (using multiplier of 4.4); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *see also* 1 Alba Conte, *Attorney Fee Awards* §2.06, at 39 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10 times the lodestar.").

As the court noted in *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990): "There should be no arbitrary ceiling on multipliers."  This is especially true when a lodestar/multiplier is used merely as a cross-check on reasonableness.  To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation.  *See also Ikon*, 194 F.R.D. at 196 ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent.").  Indeed, the multiplier here is amply supported by the substantial nature of the recovery.

Finally, it is well to remember that the time involved is just one factor of many to be considered by the court in awarding a fair fee.  *See In re Harrah's Entm't*, No. 95-3925, 1998 U.S. Dist. LEXIS 18774, at *15 (E.D. La. Nov. 25, 1998) ("Because counsel prosecuted this action on a contingent fee basis, the Court would rather focus on results obtained.  To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.").  *See also Xcel*, 364 F. Supp. 2d at 992 (early settlements are consistent with the purposes of the Federal Rules of Civil Procedure, and modest lodestars are the result of efficient case prosecution).  Here, Lead Plaintiffs' counsel served the Class well by effectively and efficiently litigating the case.

As discussed above and as detailed in the Joint Declaration, Lead Plaintiffs' counsel invested substantial time and effort prosecuting this Litigation to a successful completion.  The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Lead Plaintiffs' counsel's lodestar.

## F.     The Class's Reaction to the Fee Request

To date, the Claims Administrator has sent over 52,000 copies of the Notice to Class Members informing them, *inter alia*, that Lead Plaintiffs' counsel intended to apply to the Court for

an award of attorneys' fees not to exceed 30% of the Settlement Fund, plus expenses not to exceed $275,000.00. The time to object to the fee request expired on November 14, 2007. Not a single objection to the fee and expense request was received. Joint Decl. ¶63. "[S]uch a low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (citation omitted). Moreover, "a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive." *Id*. The fact that no objections were received is compelling evidence of the fairness of the fee request.

## V.   Lead Plaintiffs' Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of This Action

Lead Plaintiffs' counsel also request $150,953.31 in expenses incurred while prosecuting this action. Lead Plaintiffs' counsel have submitted separate declarations attesting to the accuracy of their expenses. These expenses are properly recovered by counsel. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable out-of-pocket expenses necessary to the representation of the class). Most of Lead Plaintiffs' counsel's expenses were incurred for professional services rendered by Lead Plaintiffs' investigators, experts and consultants. The remaining expenses are attributable to the costs of travel, computerized research, copying documents and other incidental expenses incurred in the course of litigation. These expenses were critical to Lead Plaintiffs' success in achieving the proposed settlement. *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [and] [f]or this reason, they are properly chargeable to the Settlement fund."). Not a single objection to the expense request has been received. Joint Decl. ¶64.

Accordingly, Lead Plaintiffs' counsel respectfully request reimbursement for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## VI.    CONCLUSION

Based on the foregoing and the entire record herein, Lead Plaintiffs' counsel respectfully request that the Court award attorneys' fees of 25% of the Settlement Fund plus expenses in the amount of $150,953.31, plus interest on both amounts.

DATED:  January 4, 2008                         Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
DAVID A. ROSENFELD (DR-7564)
MARIO ALBA, JR. (MA-7240)


                                         s/ Samuel H. Rudman
                              _____
                                      SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

SCHIFFRIN BARROWAY TOPAZ
  & KESSLER, LLP
DAVID KESSLER
KAY E. SICKLES
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)

Co-Lead Counsel for Plaintiffs

S:\Settlement\RenaissanceRe.set\BRF FEE 00048099.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing documents *via* the United States Postal Service to the non-CM/ECF participants.

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

s/ Samuel H. Rudman
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
E-mail: SRUDMAN@csgrr.com

# Mailing Information for a Case 1:05-cv-06764-WHP

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@csgrr.com,e_file_ny@csgrr.com,drosenfeld@csgrr.com

- **John J. Clarke , Jr**
  john.clarke@dlapiper.com

- **George T Conway , III**
  GTConway@wlrk.com

- **Ken Laves Hashimoto**
  ken_hashimoto@aporter.com

- **Christopher J. Keller**
  ckeller@labaton.com,ElectronicCaseFiling@labaton.com

- **Ashley H. Kim**
  ashley@spornlaw.com

- **James D. Mathias**
  james.mathias@dlapiper.com

- **Steven Robert Paradise**
  sparadise@velaw.com

- **Jonathan M. Plasse**
  jplasse@labaton.com,electroniccasefiling@labaton.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Kay E Sickles**
  ksickles@sbtklaw.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com

- **Shelley Thompson**
  sthompson@labaton.com,electroniccasefiling@labaton.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Anne P. Davis
Arnold & Porter LLP

555 Twelfth Street, NW
Washington, DC 20004-1206

**Lummis, Merritt, Riker and Stanard**
,

**Scott B. Schreiber**
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, DC 20004-1206

**Robert Alexander Schwartz**
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206