UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re RENAISSANCERE HOLDINGS LTD. SECURITIES LITIGATION | Master File No. 1:05-cv-06764-WHP<br><br>**ELECTRONICALLY FILED**<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | JOINT DECLARATION OF MICHAEL K. YARNOFF AND ELLEN GUSIKOFF STEWART IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR DISTRIBUTION OF NET SETTLEMENT FUND |

1.      We, Michael K. Yarnoff and Ellen Gusikoff Stewart, are partners with the law firms of Barroway Topaz Kessler Meltzer & Check, LLP (f/n/a Schiffrin Barroway Topaz & Kessler, LLP) and Coughlin Stoia Geller Rudman & Robbins LLP, respectively, which together served as Co-Lead Counsel for plaintiffs District No. 9, I.A. of M. & A.W. Pension Trust, Pension Trust for Operating Engineers and Joseph Moss (the "Lead Plaintiffs") and the Class in the above-captioned action (the "Action").

## PROCEDURAL HISTORY

2.      Lead Plaintiffs (on behalf of the Class) and defendants RenaissanceRe Holdings Ltd. ("RenaissanceRe" or the "Company"), John M. Lummis, Martin J. Merritt, William I. Riker and James N. Stanard (collectively, the "Settling Defendants" and together with Lead Plaintiffs, the "Parties") entered into a Stipulation of Settlement dated as of April 13, 2007 (the "Stipulation"), wherein the Parties agreed, in substance, that in exchange for the payment of $13,500,000 plus any accrued interest (the "Settlement Fund"), there would be a full and complete settlement of all class claims against the Defendants.[1] The Settlement Fund, net of any taxes on the income thereof, and net of any funds used to pay Court-awarded attorneys' fees and expenses and other costs, including notice and administrative costs and escrow fees, is the Net Settlement Fund.

3.      By its Order for Notice and Hearing dated September 12, 2007 ("Notice Order"), the Court directed that the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Reimbursement of Expenses and Settlement Hearing ("Notice") be mailed to all identifiable Class Members. The mailing of the Notice was conducted in accordance with the Notice Order.[2]

---

[1] "Defendants" are RenaissanceRe, Michael W. Cash, John M. Lummis, Martin J. Merritt, William I. Riker and James N. Stanard.

[2] In order to address a group of potential Class Members that had not received timely notice, A.B.

4.  Additionally, pursuant to the Notice Order as well as payment obligations set forth in the Stipulation, RenaissanceRe paid or caused to be paid $13,500,000 into an interest-bearing account with the Court Registry Investment System ("CRIS"). Since the funding of the settlement proceeds, certain fees, costs and expenses have been paid from the CRIS account, including attorneys' fees and expenses, escrow fees, taxes and fees and expenses incurred by A.B. Data Ltd.'s Class Action Administration Division ("A.B. Data"), the claims administrator for the Settlement.

5.  The Court held a hearing on January 11, 2008 to consider, among other things, whether the proposed Settlement should be granted final approval. By its Order and Final Judgment dated January 29, 2008 (the "Final Order"), the Court approved the Settlement and Plan of Allocation as fair, reasonable and adequate. In addition, the notice procedures were declared to be proper, and the Action was dismissed with prejudice. Also in its Final Order, the Court certified the following Class for settlement purposes:

> All persons who purchased the common stock of RenaissanceRe from April 22, 2003 through July 25, 2005, inclusive (the "Class"). Excluded from the Class are Defendants, members of the Defendants' immediate families, and their immediate representatives, heirs, successors and assigns, and any entity in which any Defendant had a controlling interest during the Class Period.

6.  Pursuant to the Stipulation, Co-Lead Counsel retained A.B. Data to administer the Settlement, to perform all analyses and accounting procedures in connection with the claims filed, and to effectuate distribution of the Settlement Fund. A.B. Data has consented to the jurisdiction of this Court.

## CLAIMS PROCESSING AND DETERMINATIONS

7.  In accordance with the Notice, all Class Members wishing to participate in the Net Settlement

---

Data mailed a revised notice to these individuals pursuant to Order dated May 13, 2008.

Fund were required to complete a Court-approved Proof of Claim and Release form ("Proof of Claim") and to mail the Proof of Claim to the post office box identified in the Notice, which box was maintained by A.B. Data. A.B. Data has disseminated a total of 61,389 copies of the Notice and Proof of Claim (together, the "Notice Packet") to potential Class Members. *See* Affidavit of Michelle M. La Count, Esq., the Senior Account Executive for A.B. Data (the "La Count Affidavit" or "La Count Aff."), ¶5, submitted herewith.

8. A.B. Data has carefully reviewed, processed and analyzed all Proofs of Claim received. *See* La Count Aff. ¶10. To date, A.B. Data has received a total of 39,334 claim forms. *Id.* The report of A.B. Data, which analyzes each claim received by A.B. Data and administratively determines which claims are submitted properly and timely, which claims are untimely, but otherwise valid, and which claims are not valid, is attached to the La Count Affidavit as Exhibit N. Of the 39,334 claims received, (i) 17,819 claims were postmarked on or before the original Court-approved submission deadline of January 4, 2008, 12,344 of which were considered valid; and (ii) 21,515 claims were postmarked after the January 4, 2008 submission deadline, 3,002 of which were considered valid. La Count Aff. ¶¶27-28.[3] *See also* Exhibit N (attaching computer printout listing all claims filed in this Action).[4] No valid claim was rejected because it was postmarked after the original submission deadline of January 4, 2008 or the extended submission deadline of July 14, 2008. La Count Aff. ¶29. Moreover, according to its analysis, A.B. Data has found 15,346 of the total claims submitted to be proper and considered valid. La Count Aff. ¶¶27-28. In the accompanying Motion for

---

[3] In order to address the set of potential claimants who had not received timely notice, *see* fn 1 above, the Court, pursuant to Order dated May 13, 2008, authorized a revised notice to be mailed to these individuals which extended the submission deadline to July 14, 2008.

[4] The computer printout to be filed with the Court provides only Claim Numbers, Recognized Claim amounts and Reasons for Rejection (no names, addresses or Taxpayer I.D. numbers are disclosed).

4

Distribution of Net Settlement Fund, Co-Lead Counsel are requesting Court approval of these claims. The total Recognized Claim amount of the 15,346 claims A.B. Data has accepted and the value for which approval is sought, calculated pursuant to the terms of the Plan of Allocation set forth on pages 3 and 4 of the Notice, is $150,317,492.73. *See* La Count Aff. ¶¶27-28, 30.

9. A.B. Data has also rejected 23,988 claims. *See* La Count Aff. ¶31; *see also* Exhibit N(3) (attaching computer printout listing all rejected claims). Paragraph 31 of the La Count Affidavit sets forth the specific reasons for the rejection of these claims: (i) 22,307 claims were rejected because the Recognized Claim amount of these claims, as calculated pursuant to the Plan of Allocation, was zero; (ii) 718 claims were rejected because the claims were duplicate claims; (iii) 579 claims were rejected because they had no purchases of RenaissanceRe common stock during the Class Period; and (iv) 384 claims were rejected because the deficiencies of the claims were never cured. *See* La Count Aff. ¶31.

10. For all submitted claims that: (i) lacked the required information or documentation to support the information stated on the claim forms; (ii) lacked the claimant's signature or the claimant did not have the authority to sign; (iii) lacked the required documentation to substantiate a claim filed on behalf of a deceased Class Member; (iv) did not included the full name of all individual(s) listed on the account and/or the supporting documentation did not include the full name of the account; or (v) lacked the claimant's Taxpayer I.D. Number, A.B. Data sent a Deficiency Letter to the claimant advising him, her or it of the deficiency and requesting submission of the required filing information or documentation within 20 days of the date of the Deficiency Letter. After carefully reviewing responses to Deficiency Letters, A.B. Data, as detailed in ¶9 above, sent Rejection Letters via first class mail to those claimants who failed to adequately cure deficiencies with their claim

forms by the specified date. La Count Aff. ¶¶11-16; *see also* Exhibits A through F to the La Count Affidavit (attaching copies of Deficiency Letters Nos. 1-4 and 7 and Release Letter 1).[5]

11. For claimants who: (i) did not meet the requirements for participation pursuant to the Court-approved Plan of Allocation contained in the Notice; (ii) submitted duplicate claim forms; (iii) had a Recognized Claim which calculated to zero and failed to submit supporting documentation; (iv) failed to timely and adequately cure deficiencies with their claims; or (v) did not purchase RenaissanceRe common stock during the Class Period, A.B. Data sent a Rejection Letter to the claimant advising him, her or it of the rejection as well as the claimant's right to have this Court review A.B. Data's administrative determination by memorializing their objections, if any, in writing within 20 days of the date of the Rejection Letter. La Count Aff. ¶¶17-21; *see also* Exhibits G through K to the La Count Aff. (attaching copies of Rejection Letters Nos. 1-5). Not one claimant currently requests this Court's review of his, her or its claim. *See* La Count Aff. ¶23.

### SUMMARY OF CLAIMS PROCESSING

12. As stated above, 15,346 of the total claims submitted to A.B. Data were considered valid.

13. As further set forth above, included in this total number of valid claims are late-postmarked claims which were determined to be otherwise valid. Co-Lead Counsel believe that it would be fair, reasonable and in the interest of justice to allow the otherwise valid, but late-postmarked claims to share in the Net Settlement Fund. Co-Lead Counsel request that these claimants who filed otherwise valid, but late postmarked claims be allowed to participate in the Net Settlement Fund as if their claims had been timely filed. *See* La Count Aff. ¶29.

---

[5] A.B. Data mailed Release Letter 1 (along with certain of the Deficiency Letters) to claimants that did not provide full documentation from their brokers. The Release Letter, once completed, served as a release allowing A.B. Data to contact the claimants' brokers for the missing information so that the claimants would not have to do so. La Count Aff. ¶12, fn. 4.

6

14. Lead Plaintiffs respectfully request that this Court approve the administrative determination of Co-Lead Counsel and A.B. Data to approve all valid claims listed on Exhibit N(1) and (2) to the La Count Affidavit, with total Recognized Claims of $150,317,492.77. *See* La Count Aff. ¶30.

15. Lead Plaintiffs respectfully request this Court to approve the administrative determination of Co-Lead Counsel and A.B. Data to reject the claims identified in ¶9 above (and listed on Exhibit N(3) to the La Count Affidavit), which had no Recognized Claim when calculated pursuant to the Plan of Allocation; were duplicate claims; had no purchases of RenaissanceRe common stock during the Class Period; or were deficient and never cured. *See* La Count Aff. ¶31.

## TAXES AND EXPENSES

16. Pursuant to the Notice Order and Stipulation, the Settlement Fund was deposited into an interest-bearing CRIS account. Under the provisions of §1.468B of the Internal Revenue Code, taxes must be paid on the Settlement Fund. For the period during which the Settlement Fund has been held in the CRIS account, A.B. Data has filed the necessary tax returns. To date, there have been no taxes due. Any monies payable to the Internal Revenue Service at the time of distribution, if any, on the interest earned on the settlement proceeds will be withheld from payment to the Class and immediately paid to the Internal Revenue Service.

17. Lead Plaintiffs respectfully request that A.B. Data be paid the sum of $51,198.45 from the Settlement Fund for the balance of its fees and expenses for services performed and to be performed in connection with the administration of the Settlement. *See* La Count Aff. ¶39; *see also* Exhibit O to the La Count Affidavit (attaching invoices reflecting A.B. Data's outstanding fees and expenses).

## DISTRIBUTION PROCESS

18. The Net Settlement Fund is ready to be distributed at this time. Lead Plaintiffs therefore

respectfully request the Court direct A.B. Data to distribute the Net Settlement Fund to the claimants whose claims Co-Lead Counsel and A.B. Data administratively determined to be valid, as listed on Exhibit N(1) and N(2) to the La Count Affidavit. Pursuant to the Notice sent to the Class, if these administrative determinations are approved, each of these claimants will receive a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim compared to the total Recognized Claims of all accepted claimants.

19.     It may be expected that not all of the checks sent to the 15,346 Authorized Claimants (including late filing claimants) will be cashed promptly, and that not all of the Authorized Claimants will be located.

20.     Lead Plaintiffs respectfully request that, if any funds remain in the Net Settlement Fund six (6) months after the initial distribution of such funds by reason of un-cashed checks, or otherwise, and after the Claims Administrator has made reasonable and diligent efforts to have claimants who are entitled to participate in the distribution of the Net Settlement Fund ("Authorized Claimants") cash their distribution checks, the remaining funds shall be used: (i) first to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, provided that such distribution to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution, (ii) second to pay any additional settlement administration fees and expenses, and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second

distribution is economically feasible. If after six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, A.B. Data shall take the steps necessary to transfer such funds to the United States Treasury.

21. Lead Plaintiffs respectfully recommend that one (1) year after the distribution of the Net Settlement Fund, the Claims Administrator be authorized to follow its internal document retention policy, permitting the Claims Administrator to destroy documents relating to this Action in accordance with that policy. The proposed Order has been drafted to permit the Claims Administrator to discard these documents in accordance with its policy.

22. In order to effectuate the final distribution of the Net Settlement Fund, Lead Plaintiffs respectfully request this Court release and discharge all persons who are involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims filed in this Action, or who are otherwise involved in the administration or taxation of the Settlement Fund, or the Net Settlement Fund from any and all claims arising out of such involvement, and, pursuant to the release terms of the Settlement, bar all Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund or the Released Parties beyond the amount allocated to them by the Settlement as approved by the Court.

We declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of January, 2010, at Radnor, Pennsylvania.

_____
MICHAEL K. YARNOFF

9

Executed this/4th day of January, 2010, at San Diego, California.

_____
ELLEN GUSIKOFF STEWART

CERTIFICATE OF SERVICE

I hereby certify, that on January 20, 2010, I caused the foregoing Joint Declaration of Michael K. Yarnoff and Ellen Gusikoff Stewart in Support of Lead Plaintiffs' Motion for Distribution of Net Settlement Fund to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART